Louisana & Mississippi R. Transfer Co. *et al. v.* Long.

(Division B.   Nov. 17, 1930.)

[131 So. 84.   No. 28960.]

Hirsh, Dent & Landau, of Vicksburg, Chas. N. Burch, H. D. Minor and C. H. McKay, all of Memphis, Tenn., for appellants.

Hirsh, Dent & Landau, of Vicksburg, **Stubbs & Thompson**, of Monroe, La., and **Charles N. Burch**, of Memphis, Tenn., for appellants.

Hirsh, Dent & Landau, of Vicksburg, **Stubbs & Thompson**, of Monroe, La., and **Charles N. Burch, H. D. Minor** and **C. H. McKay**, all of Memphis, Tenn., for appellants.

**Henry & Henry, Brunini & Hirsch** and **Canizaro & Canizaro**, all of Vicksburg, for appellee.

Argued orally by **R. L. Dent** and **Frank P. Stubbs**, for appellants, and by **John Brunini** and **P. C. Canizaro**, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Warren county against the Louisiana & Mississippi Railroad Transfer Company and the Yazoo & Mississippi Valley Railroad Co. The suit was for the alleged rental value of an alleged use and occupancy of property claimed by the plaintiff, Mrs. Long, abutting on the Yazoo canal or Yazoo river.

The Louisiana & Mississippi Railroad Transfer Company for many years prior to the suit had operated railroad transfer boats (two in number) to transfer trains across the Mississippi river from the city of Vicksburg, in the state of Mississippi, to the town of Delta, in the state of Louisiana. The railroad tracks on the east side of the Mississippi river extend down an incline to the east bank of the Mississippi river, adjacent to and immediately south of the mouth of the Yazoo canal, or river, so that the two boats, in making the transfer of trains across the Mississippi river, partly used the waters of the Mississippi and the Yazoo rivers. Ordinarily one transfer boat was used at a time, but in cases of unusual business and emergency both were operated in the transfer at the same time. At the time either of the said boats was not in use in the transferring of trains as above indicated, it was tied up in front of the plaintiff's property.

The boat rested upon the water of the Yazoo canal and was fastened by means of cables attached to trees growing upon the land of the plaintiff. The transfer boats were not kept in constant use, but were used intermittently as the business required. The place where the boats were moored when not in use was at a point where the river had made an indentation upon the bank, making it a favored spot for mooring, as it was better protected from wind and storm, and also from interference with boats plying up and down the Yazoo canal. At times of high-flood water, the entire land of the plaintiff is submerged, but at other times the water is confined within banks; the water depth or height varying from low-water to high-water mark. The only part of the land of the plaintiff used was the tree to which the cable was attached, and the cable from that point to the water edge, but the boat lay in front of the property and prevented other boats from coming in and mooring and going out at that point.

The suit was to cover a period of use of ten years, and rent and damages were claimed at the rate of fifty dollars per month. At the conclusion of the evidence the court below peremptorily instructed the jury as follows: "The court instructs the jury to find for the plaintiff as against both defendants and assess her damages for the use and occupation of her property by the defendant, Louisiana & Mississippi Railroad Transfer Company, as shown by the evidence, for the six years commencing on the 8th day of August, 1923, at such sum as you may believe from the preponderance of the evidence in the case was the reasonable rental value of plaintiff's property so used by the said defendant, Louisiana & Mississippi Railroad Transfer Company, with six per cent per annum interest from the 8th day of August, 1929."

After the Yazoo & Mississippi Valley Railroad Company began the operation of the Alabama & Vicksburg Railway Company and the Vicksburg, Shreveport &

Pacific Railway Company, and to transfer cars across the river, it agreed to pay the liabilities against the Louisiana & Mississippi Railroad Transfer Company.

It is the contention of the appellant that there is no liability to the plaintiff for the use made of the trees for the mooring of the boat in question, because, it is contended, the law of Louisiana controls, and under the law of that state the rivers are highways and the use of the navigable rivers or streams are public, and every one using the water has a right to bring his vessels to land upon the banks of the river, making the same fast to the trees which are growing or planted there, and to unload his vessel or deposit his goods, etc., and that the acts which are shown by the evidence to have been done in this case were but the exercise of the rights conferred under the Louisiana law. Article 455, Merrick's Revised Code of Louisiana, Third Edition, reads: "The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.

"Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands."

Article 457, Merrick's Revised Code of Louisiana, defines the banks of a river or stream as follows: "The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time. Nevertheless on the borders of the Mississippi and other navigable streams, where there are levees, established according to law, the levees shall form the banks."

Under the law "the term 'river' includes the bed of the stream, up to its state of ordinary high water." Minor's Heirs v. City of New Orleans, 115 La. 301, 38 So. 999, 1000. The bed of the river from low-water mark

on the Louisiana side to the center of the stream is in the state of Louisiana in its sovereign capacity.

The evidence in the case showed that for much of the time involved in the period covered by the instruction and judgment, one of the boats was moored in front of this property of the plaintiff and remained there for long periods of time. The boats were changed from time to time. When one was at rest or moored, another was taken into the operation of transfer business and the other placed at the point reserved for that purpose. A portion of the time the boat was moored on the east side of the river, and at one period, for a considerable time, one of the boats was sent to a point in Iowa for repairs and was extended in length. It is contended by the appellant that the use, therefore, made of the trees for mooring and cable over the land to the boat for that purpose was the exercise of rights under the laws of navigation under the statute of Louisiana, above cited, and although both of the boats were not usually employed at the same time in the actual transfer of the cars, that it was necessary for the purposes of navigation and transfer of cars and furtherance of commerce to have both boats ready and equipped at all times for such purposes.

It also contends that, if mistaken in this contention, the three-year statute of limitation bars the action for all time beyond three years, and pleaded such statute at the trial and sought instructions to the jury advising the jury that such right was barred for the period beyond three years prior to the bringing of the suit, which instructions the court refused, and granted the one above set forth. It also contends that, if mistaken in both of these propositions, the court was in error in instructing the jury to find for a period of six years, because the proof shows that the mooring was not continuous through the full six-year period of time.

The granting of the instruction, above set out, to the plaintiff presents all these questions, and if any of these

contentions is sound, it was error to give the instruction in the form that it was given. We think that the plaintiff was entitled to recover something for the use of her property under the circumstances and for the continuous and exclusive use thereof, or if not continuous, at least for long periods at a time in such manner as to exclude others from a similar use, because the rights conferred under the statute do not permit one person using the river as a highway for navigation or commerce to take control of the bank or shore to the exclusion of others. Such right to moor, load and unload, dry net, and perform other things named in the statute, is a reasonable use in common with other users of the river. A party owning land situated similar to the plaintiff's in this case may find a valuable use of the lands adjacent to the river when commerce and navigation is carried on in its usual manner, and the mooring or landing is only for a limited and temporary period, and the owner may find the land valuable to rent for such purposes; but if one person can take charge of a particular point and keep his boats moored there all the time, although such boats are instrumentalities of commerce and navigation, and such use excludes others, the plaintiff is damaged in his proprietary rights, and the value of his lands for the purposes for which it may be available under ordinary circumstances is reduced, or may be in practical effect even destroyed.

It may be that it was necessary to have the boats at all times ready for the purposes of transfer to effectively carry on the business in which the owners of the boats were engaged; but this would not warrant them in monopolizing and taking a practically exclusive control of the banks or shore at a particular point. And if they do so, and deprive others from using the banks for proper purposes, and deprive the owner from resorting to the benefits that would follow from the general course of business or navigation having different boats resort to that point,

this would entitle the owner to compensation for the trespass or wrong done the owner by thus monopolizing and practically destroying the rights to resort to such point by others engaged in commerce and navigation.

We think the case of Pittsburgh & Southern Coal Co. v. Otis Mfg. Co. (C. C. At.), 249 Fed. 667, 668, et seq., and authorities cited in that opinion, entitle the plaintiff in this case to some compensation for the use of her property. In that case the court said: "That the land between a levee and the river is the property of the riparian proprietor, subject to public use, is a proposition well settled in the law of Louisiana. Mathis v. Board of Assessors, 46 La. Ann. 1570, 16 So. 454; Civil Code of Louisiana, arts. 455, 457. That another's unauthorized use of that space for a private purpose gives rise to a right of action in favor of the riparian proprietor has been authoritatively decided. Carrollton R. Co. v. Winthrop, 5 La. Ann. 36. That the right which the public has to use the banks of navigable rivers does not enable one other than the riparian proprietor to appropriate a part of such bank to his private use is a proposition not fairly open to question. Lyons v. Hinckley, 12 La. Ann. 655; Duverge v. Salter, 6 La. Ann. 450; Cochran v. Dry-Dock Co., 30 La. Ann. 1365."

We think that the periods in which the boats were tied up when not in service, that is, when one boat was tied up and the other used in service, the boat tied up being merely in reserve for the purpose of being placed in service when it should be needed, constitutes making the mooring a private purpose during such pendency of inactivity when such boat is unnecessary. We therefore think that it was liable under the facts disclosed in the record.

We are of the opinion that the three-year statute of this state is not applicable, but that the statute of limitation in Mississippi applies. The Louisiana statute, as we

understand it, merely bars the remedy and not the right of action. The Mississippi statute relied upon by the appellant in section 2637, Hemingway's 1927 Code, section 3099, Code of 1906, which reads: ''Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after.'' It is clear, in the case before us, that there was no contract. The appellant refused to recognize the rights of the appellee, the plaintiff, to any compensation and claimed that the rights of the appellant justified its act under the law and was, therefore, not a claim in recognition of the rights of the plaintiff in this respect but one adverse thereto, and consequently was not a contract but was in the nature of a civil wrong or tort, and does not come within the terms of the statute above quoted.

An action for use and occupancy is founded upon contract, express or implied. Section 2536 of Hemingway's 1927 Code, section 2876, Code of 1906, provides: ''A landlord, where the agreement is not in writing, or where there is no contract, may recover a reasonable satisfaction for the lands held or occupied by another in an action for the use and occupation of what was so held or enjoyed. And if there appear in evidence on the trial of such action any demise or agreement, the plaintiff shall not on that account be nonsuited, but may make use thereof as evidence of the amount of damages to be recovered.'' It has been held, under this statute, that the statute gives the right in all cases where the possession is held in recognition of and not adversely to the title of the party suing. Newberg v. Cowan, 62 Miss. 570. In Inman v. Morris, 63 Miss. 347, it was held that an action for use and occupation cannot be maintained against a person who holds possession adversely to plaintiff. On the other hand, in an action of ejectment, which is an action for the wrongful withholding of possession of land from another, and

involving question of title and compensation for use, it was held that the six-year statute governs the recovery of compensation for the land so wrongfully withheld. Dean v. Tucker, 58 Miss. 487.

Under section 2652, Hemingway's 1927 Code, section 3114, Code of 1906, it is provided: "When a cause of action has accrued in some other state or in a foreign country, and by the law of such state or country, or of some other state or country where the defendant has resided before he resided in this state, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state." It appears that under the Louisiana law the action would be barred in three years, but the Mississippi statute must be applied, because it is held, construing the above statute, that the statute only applies where a nonresident in whose favor the statute has accrued afterward moves into this state. Louisville, etc., R. Co. v. Pool, 72 Miss. 487, 16 So. 753; Robinson v. Moore, 76 Miss. 89, 23 So. 631. The right of action therefore was not barred until the expiration of six years from the date of its accrual. It appears, however, as stated above and from the evidence in the record, that there were periods of time during the six years preceding the institution of the suit in which the banks of the property of the plaintiff were not used by the appellant for mooring. It does appear that the boat was moored there a large part of the time, but it affirmatively appears that there were other periods of time during which the boat was moored on the east side of the river and other periods in which both boats were constantly engaged in commerce, and one quite long period when one boat was sent up to a point in Iowa for repairs and to have its length extended. The proof as to the value of the mooring, or for the use of the property of the plaintiff, which the defendant made, varied in amount, there being considerable proof tending to show that it would be twenty-five dollars per month or

less; and it also appears that there were some rented for ten dollars per month.

The plaintiff was only entitled to recover for the time in which the boats were moored in front of her property, unless they were moored so continuously and constantly as to practically be for the whole time. This record does not make such case. Taking all the testimony into consideration, we cannot say that the error was harmless and that the plaintiff certainly was entitled to the amount of judgment recovered. The jury should have been permitted to find the length of time, or part or proportion of the time, which the property was used as compared to the whole length of time involved in the six-year period, and to have limited its verdict accordingly. There is considerable difficulty in determining from the record how much time was actually occupied with mooring, and we do not know just what rent per month or year the jury intended to allow. We must therefore reverse the case and remand it for a new trial as to the amount of damages. The judgment of liability will be affirmed.

Reversed and remanded for the assessment of damages alone.