Albert J. FERENS and Margaret L. Ferens, his wife, Plaintiffs,

v.

DEERE & COMPANY, Defendant.

Albert J. FERENS and Margaret L. Ferens, his wife, Plaintiffs,

v.

JOHN DEERE COMPANY, a/k/a Deere & Company, Defendant.

Civ. A. Nos. 85-1534, 85-2725.

United States District Court,
W.D. Pennsylvania.

July 25, 1986.

Stanley V. Ostrow, William A. Penrod, Pittsburgh, Pa., Faye Murphree James, William R. Barnett, Jackson, Miss., for plaintiffs.

Gary J. Sharlock, Sharlock, Repcheck & Mahler, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

Presently before the Court is Defendant's Motion for Summary Judgment in the above-captioned cases. Diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332 (1982).

*Summary of Facts and Procedural History*

Plaintiffs, Albert J. Ferens and Margaret L. Ferens, reside in Dunbar, Fayette Coun-

ty, Pennsylvania. Defendant, Deere & Co., is a Delaware corporation with its principal place of business in Moline, Illinois. Defendant Company is in the business of manufacturing, advertising, selling and distributing combines, which are used to thresh and clean grain.

On or about July 17, 1981, Plaintiff purchased a John Deere Sidehill # 6620 Combine, Serial No. 454907, which was manufactured by Defendant. Complaint, ¶ 4. Defendant sold the combine in question to the Uniontown Farm Equipment Company, which company thereafter sold the combine to Plaintiff for use on his farm. *Id.*, ¶ 6.

On or about July 5, 1982, in Washington County, Pennsylvania, while Plaintiff was cleaning the combine, his right hand was pulled into the rotating auger, thereby amputating it above the wrist. *Id.*, ¶ 7.

On July 3, 1985, Plaintiffs filed C.A. 85–1534 in the Western District of Pennsylvania, basing their claim on the Pennsylvania Commercial Code, 13 Pa.C.S. §§ 1101–9507 (Purdon 1984). Specifically, Plaintiffs alleged that the combine was expressly and/or impliedly warranted by Defendant to be merchantable and fit for the ordinary purposes for which it was used, and that Defendant breached its express and/or implied warranties since the combine was, in fact, defective.

Subsequently, on July 25, 1985, Plaintiffs filed C.A. 85–2725 in the Southern District of Mississippi, Jackson Division. That action, which was founded on the same accident whereby Plaintiff lost his right hand, sought damages which were identical to those sought in Plaintiffs' initial action; however, recovery was based on theories of negligence and strict liability under § 402A and B of the Restatement (2d) of Torts. In their complaint in the subsequent action, Plaintiffs alleged that the combine was defective in and of itself, and as a result of Defendant's failure to warn of the alleged defects.

In a rather unusual procedural move, Plaintiffs then filed a motion for change of venue of the Mississippi action under 28 U.S.C. § 1404(a). Plaintiffs' motion was granted on November 8, 1985 by United States Magistrate John R. Countiss, III of the Southern District of Mississippi, Jackson Division, who transferred Plaintiffs' second action to the Western District of Pennsylvania. Thereafter, by Order of this Court dated November 21, 1985, the two lawsuits were consolidated for all purposes.

*Summary Judgment*

Defendant has filed this Motion for Summary Judgment on the grounds that 1) the purchase order disclaimed any implied warranties of merchantability and fitness for a particular purpose, and contained an exclusion of consequential damages; and 2) Pennsylvania's two-year limitations period bars Plaintiffs' negligence and strict liability claims.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 26; *Anderson v. Liberty Lobby Inc.*, — U.S. —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of proving that no genuine issue exists, *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and any doubts must be resolved in favor of the nonmoving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985) (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)).

The United States Supreme Court has recently stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, —, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S.Ct. at 2510.

Here, the motion is made by the Defendant solely on the basis of the pleadings

without supporting affidavits; thus, the motion is functionally equivalent to a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir.1968), quoting 6 J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 56.02[3], at 2035. As such, all well-pleaded factual allegations of the Plaintiffs must be taken as true and all allegations of the moving party which have been denied are taken as false; conclusions of law are not deemed admitted. *Shade v. Commonwealth of Pennsylvania Dept. of Transportation*, 394 F.Supp. 1237, 1243 (M.D.Pa.1975).

## I. *Disclaimer of Warranties*

Defendant claims that the purchase order conspicuously included the warranties which accompanied the sale of the combine and that it disclaimed the implied warranties of merchantability and fitness for particular purpose. In addition, Defendant emphasizes that said purchase order contained a clause excluding consequential damages. Defendant's Answer, Exhibit "A."

Plaintiffs admitted to the authenticity of the purchase order in their Reply to Defendant's Answer; however, Plaintiffs contend that the terms of the purchase order are unconscionable, amount to a contract of adhesion and are against public policy.

Under its adoption of the Uniform Commercial Code, 13 Pa.C.S. § 2316 provides that warranties may be excluded or modified at the time of sale:

§ 2316. Exclusion or modification of warranties

. . . . .

(b) Implied warranties of merchantability and fitness.—Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify an implied warranty of fitness the exclusion must be by a writing and conspicuous. . . .

(c) Implied warranties in general.—Notwithstanding subsection (b):

(1) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which is common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty.

(2) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

(3) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

. . . . .

*Id.* See *Thermo King Corp. v. Strick Corp.*, 467 F.Supp. 75 (W.D.Pa.), *aff'd*, 609 F.2d 503 (3rd Cir.1979) (manufacturer's warranty card contained "conspicuous" language to exclude implied warranties).

In the present case, the purchase order provided as follows:

The Warranty on the reverse side is a part of this contract and the following applies where permitted by law: Neither seller, John Deere Company, nor the manufacturer makes any other representations or warranties, express or implied (AND EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) or has any obligations to the Purchaser except as provided on the reverse side.

Defendant's Answer, Exhibit "A."

On the reverse side of this purchase order, in paragraph F, the disclaimer is again set forth:

F. NO REPRESENTATION OR IMPLIED WARRANTY.

Where permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations

or promises, express or implied, as to the quality or performance of its products other than those set forth above and DOES NOT MAKE ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS.

*Id.*

Paragraph G on the reverse side added:

G.  REMEDIES EXCLUSIVE.

The only remedies the purchaser has in connection with the breach or performance of any warranty on John Deere equipment are those set forth above.  In no event will the dealer, John Deere or any company affiliated with John Deere be liable for incidental or consequential damages or injuries, including, but not limited to loss of crops, loss of profits, rental of substitute equipment or other commercial loss.

In its definition of consequential damages, 13 Pa. C.S. § 2715(b)(2) provides:

(b) Consequential damages.—Consequential damages resulting from the breach of the seller include:

. . . . .

(2) injury to person or property proximately resulting from any breach of warranty.

*Id.*

Plaintiffs, in support of their argument that the disclaimer of warranties and exclusion of remedies provisions are unconscionable, rely on 13 Pa.C.S. § 2719(c):

(c) Limitation of consequential damages. —Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

*Id.*

Whether a contract or clause is unconscionable is a question of law for the court. *Bishop v. Washington,* 331 Pa.Super. 387, 399, 480 A.2d 1088, 1094, (1984).  The relevant section on unconscionability, 13 Pa. C.S. § 2302, provides:

§ 2302.  Unconscionable   contract   or clause

(a) Finding and authority of court.—If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may:

(1) refuse to enforce the contract;

(2) enforce the remainder of the contract without the unconscionable clause;  or

(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.

(b) Evidence by parties—When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

■ Plaintiffs argue that the above language renders Defendant's motion premature since the parties have not presented evidence on the issue of unconscionability. We agree for the following reasons.

The Pennsylvania Supreme Court has adopted the following definition of unconscionability:

Unconscionability has generally been recognized to include an *absence of meaningful choice* on the part of one of the parties together with contract *terms which are unreasonably favorable to the other party.*

*Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981), quoting *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965).  In the *Williams* case, Judge Skelly Wright summarized the factors to be considered in determining whether a contract or clause is unconscionable or not:

Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.  In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power.  The man-

ner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld.

In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made. The test is not simple, nor can it be mechanically applied. The terms are to be considered "in the light of the general commercial background and the commercial needs of the particular trade or case."

*Williams,* 350 F.2d at 449–450 (footnote omitted).

In the present case, since no affidavits, interrogatories, depositions, or evidence of any sort has been submitted regarding the circumstances surrounding the transaction, we can only speculate as to whether or not the purchase order was unconscionable. Following the mandate of 13 Pa.C.S. § 2302(b), we find it necessary to afford the parties a reasonable opportunity to present evidence on the "commercial setting, purpose and effect" of the disputed language in the purchase order. We note that while Plaintiff is a farmer, that alone is not indicative of his commercial standing because he may be a "small-time" farmer or he may be a large corporate farmer with thousands of acres of land. *See Purvis v. Consolidated Energy Products Co.,* 674 F.2d 217, 224 (4th Cir.1982) (Hall, J., dissenting) ("while in its broadest sense the meaning of 'commercial' could include any activity intended to yield a profit, in common parlance the term is generally associated with manufacturing or retail activities").

Once we are presented with some evidence as to whether the transaction was of a commercial or consumer nature, prior dealings between the parties, customary practice within the industry etc., we will then be able to make a determination on the issue of unconscionability. As it currently exists, however, the record is barren on that matter. Thus, Defendant's reliance on *Beckman v. Vassall-Dillworth Lincoln Mercury, Inc.,* 321 Pa.Super. 428, 468 A.2d 784 (1983) for the proposition that summary judgment should be granted is misplaced, as there, the state court had the benefit of affidavits, deposition testimony and other evidence which enabled it to render a decision that the contract clause was not unconscionable. *Id.* at 439–40, 468 A.2d at 788.

Defendant also relies on *Thermo King Corp., supra,* where this Court found a similar warranty exclusion and limitation of remedy provision not to be unconscionable. However, *Thermo King* is not dispositive of this case because it indubitably involved a commercial transaction between two corporate parties. *Id.* at 78. Moreover, unlike the situation in the case before us which involves injury to the person, *Thermo King* only involved consequential damages for the loss of $15,000 worth of cargo. *Id.* at 77. While the applicable provisions of the purchase order here would most likely bar a claim for the loss of crops or profits resulting from a defective blade in the combine, we are not convinced that the Plaintiff understood those provisions as limiting his right to bring a breach of warranty action for the loss of his hand. *Cf. Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 499 F.2d 146 (3d Cir.1974) (contract clause must clearly and unequivocally express intent necessary

to exculpate defendant from negligence or strict liability claims).

Accordingly, we will deny Defendant's Motion for Summary Judgment on Plaintiff's breach of warranty claim without prejudice. Defendant may reassert said motion, if deemed necessary, once the record becomes fully developed as set forth above. *See Wobb v. Ford Motor Co.,* 76 F.R.D. 452, 458 (W.D.Pa.1977) (motion for summary judgment denied with respect to counts alleging unconscionability of dealer development arrangement since further discovery was necessary relative to motive and intent).

## II. *Applicable Statute of Limitation for Plaintiffs' Tort Claims*

Our inquiry now turns to what statute of limitations governs Plaintiffs' negligence and strict liability claims. At the outset, we note that Pennsylvania has a two-year statute of limitations for injuries to the person, 42 Pa.C.S. § 5524(2) (Purdon 1981), whereas Mississippi's limitation period is six years. Miss.Code Ann. § 15–1–49 (1972).

As we noted earlier, Plaintiffs' tort actions were originally filed in the Southern District of Mississippi *after* Plaintiffs initiated their UCC breach of warranty claims in the Western District of Pennsylvania. Plaintiffs then transferred their tort actions from the Southern District of Mississippi to this Court pursuant to 28 U.S.C. § 1404(a) which provides:

For the convenience of the parties and witnesses, in the interest of justice, a District Court may transfer any civil action to any other district or division where it might have been brought.

*Id.*

In support of the transfer, Plaintiffs stressed the feasibility of consolidating their tort claims with their pending UCC claims in this District Court and raised concerns about the inconvenience and expense that would result if their second action remained in the Southern District of Mississippi. In his Affidavit In Support of Motion for Change of Venue, Albert J. Ferens admitted that:

6. The action against defendant, Deere & Company, in the Western District of Pennsylvania arises out of said accident which occurred on July 5, 1982, and is based on provisions of the Uniform Commercial Code.

7. The basis of the action filed against Defendant in the Southern District of Mississippi was the aforesaid July 5, 1982 accident and is based on strict liability, negligence and breach of warranty by said defendant.

8. That all witnesses with any knowledge of the accident or injuries husband-plaintiff sustained, including doctors, hospital personnel and who plaintiffs will call and use, reside in the Western District of Pennsylvania.

9. That all documents relating to the personal injuries plaintiff sustained are located in the Western District of Pennsylvania.

10. That to simultaneously pursue the Pennsylvania and Mississippi actions as separate lawsuits would be a great cost and expense to him.

*Id.,* ¶¶ 6–10.

In the instant case, both parties concede that statutes of limitations are procedural and that the applicable limitation period is to be provided by the law of the forum. *See Butler v. Dravo Corp.,* 310 F.Supp. 1265 (W.D.Pa.1970); *Vick v. Cochran,* 316 So.2d 242 (Miss.1975). To prevent forum shopping and to keep lawsuits in forums which have a significant nexus and a legitimate interest in the litigation, most jurisdictions, including Pennsylvania and Mississippi, have adopted "borrowing statutes." In essence, borrowing statutes adopt as the applicable period of limitation the statute which would have applied in the jurisdiction where the claim arose. For instance, Pennsylvania's borrowing statute provides that:

The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this

Commonwealth, which ever first bars the claim.

42 Pa.C.S. § 5521.

However, the crux of the problem in the instant case stems from Mississippi's anomalous borrowing statute which provides:

When a cause of action has accrued in some other state or in a foreign country, and by the law of such state or country, or of some other state and country *where the defendant has resided before he resided in this state,* an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state.

Miss.Code Ann. § 15–1–65 (1972) (emphasis added). The Mississippi Supreme Court, relying on the highlighted language above, has held that this borrowing statute "only applies where a nonresident in whose favor the statute has accrued afterward moves into this state." *Louisiana & Mississippi R. Transfer Co. v. Long,* 159 Miss. 654, 131 So. 84, 88 (1930). *See also Cowan v. Ford Motor Co.,* 719 F.2d 785 (5th Cir.1983) (applied Mississippi Supreme Court's interpretation of that state's borrowing statute). Since Defendant was registered to do business in Mississippi at the time of the accident here, Defendant would be treated as a resident under Mississippi law. *Kershaw v. Sterling Drug, Inc.,* 415 F.2d 1009, 1011 (5th Cir.1969). Relying on Mississippi's borrowing statute, Plaintiffs contend that the 6–year limitation of that forum should be applied.

We now reach the threshold question of whether the law of the transferor forum or the transferee forum should be applied. In resolving this question, we must consider whether Plaintiffs can utilize the change of venue provisions of 28 U.S.C. § 1404(a) to resurrect a time-barred claim in the more convenient forum.

In *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Supreme Court held that "where defendants seek transfer, the transferee district court must be obligated to apply the state law that would have applied if there had been no change of venue." *Id.* at 639, 84 S.Ct. at 821, 11 L.Ed. at 962. The *Van*

*Dusen* Court pointed out that "both the history and purpose of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of court rooms." *Id.* at 636, 84 at 819, 11 L.Ed.2d at 961. The Court stressed that § 1404(a) should not be used as a device by defendants to undermine the plaintiff's privilege of selecting "a forum which, although it was inconvenient, was a proper venue." *Id.* at 634, 84 S.Ct. at 818, 11 L.Ed.2d at 960. Moreover, the Court noted that if a change of law were concomitant with transfer, § 1404(a) would become a forum shopping mechanism. *Id.* at 636, 84 S.Ct. at 819, 11 L.Ed.2d at 961. While *Van Dusen* concluded that a change of venue should normally be considered no more than a change of court rooms, the Court qualified its holding by continuing:

In so ruling, however, we do not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor, as opposed to the transferee, state. We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404(a)

. . . . .

*Id.* at 639–640, 84 S.Ct. at 821, 11 L.Ed. at 963.

As of this moment, the Supreme Court has not ruled on the issue left unanswered by *Van Dusen,* and our research has not found any controlling authority in the Court of Appeals for the Third Circuit. However, it has been suggested that a logical interpretation of the question left unanswered by *Van Dusen* is that when a plaintiff moves to transfer, the law of the transferee state should apply, otherwise plaintiffs, as opposed to defendants, would be free to shop for inconvenient forums with longer limitation periods. *See* C. WRIGHT, LAW OF FEDERAL COURTS, § 44 at 261–62 n. 35 (West 4th Ed.1983); ALI STUDY OF THE DIVISION OF JUR-

ISDICTION BETWEEN STATE AND FEDERAL COURTS (1969). *But see,* Note, *Choice of Law In Federal Court After Transfer of Venue,* 63 CORNELL L.REV. 149, 157–58 (1977). The reasoning behind the ALI view is that it will prevent plaintiffs from using transfers to carry favorable law from one forum to another. This rationale has been followed by courts in analogous situations. *Cf. Carson v. U-Haul Co.,* 434 F.2d 916 (6th Cir.1970) (plaintiff moved to transfer to forum with longer statute of limitations; defendant not amenable to process in original forum); *Parham v. Edwards,* 346 F.Supp. 968 (S.D. Ga.1972) (justice did not require transfer from original forum, with favorable limitation period to plaintiffs but no personal jurisdiction over defendants, to forum in which service had been obtained in a similar action, but where the action was barred by the limitation period); *Mata v. Budd Co.,* 44 F.R.D. 225 (E.D.Pa.1968) (plaintiff filed lawsuit in forum where statute of limitations barred action and sought to transfer to forum with favorable limitation period); Annot., 7 A.L.R.Fed. at 27–28 (1971).

Plaintiffs argue that the law of the transferee state applies only when personal jurisdiction with the defendant is lacking or venue is improper, neither of which was contested here. *See, e.g., Gonzales v. Volvo of America Corp.,* 734 F.2d 1221, 1223–24 (7th Cir.1984) (law of forum selected by plaintiff should govern regardless of which party initiates transfer to another district); *Martin v. Stokes,* 623 F.2d 469, 471 (6th Cir.1980) (same). *See also Schreiber v. Allis-Chalmers Corp.,* 611 F.2d 790 (10th Cir.1980) (similar facts; law of transferor state applied where defendant initiated transfer). However, in *Gonzales,* the court held that plaintiffs are "not permitted to capture favorable law of forums which lack personal jurisdiction over the defendant by filing suit there and then transferring the action to a state that is able to assert personal jurisdiction." *Id.* at 1224. By analogy, we believe that this reasoning should apply to the facts before us since plaintiffs could not have originally brought their second action in the forum where it

has been transferred due to the applicable limitations period. We reiterate that § 1404(a) only permits the transfer of an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added).

We believe that, at the very least, some measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to allow Plaintiffs to avail themselves of that forum's limitation period, and the filing of a complaint which is merely a procedural ploy will not suffice. *Cf. Biby v. Kansas City Life Insurance Co.,* 629 F.2d 1289, 1294 (8th Cir.1980) (filing of complaint in transferor state was merely a procedural ploy and did not commence action for purposes of tolling the limitation period).

■ The fact that Plaintiffs' original lawsuit in this District Court did not include the claims which were time-barred under Pennsylvania law unequivocally establishes that Plaintiffs were seeking to maneuver around this by intentionally filing a second action in an inconvenient forum to avail themselves of that forum's longer statute of limitations and its plaintiff-oriented borrowing statute. By filing a subsequent lawsuit in the Southern District of Mississippi to take advantage of that state's six-year limitation period and then moving to transfer that action with their pending action in this District Court for purposes of convenience, consolidation and efficiency, Plaintiffs are seeking the "best of both forums." While we acknowledge the strong presumption in favor of a plaintiff's choice of forum, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947), where a plaintiff chooses a forum which is not his home forum, his choice should be given considerably less weight. *Jordon v. Delaware & Hudson Ry. Co.,* 590 F.Supp. 997, 998 (E.D.Pa.1984). This consideration becomes especially relevant here since the matters relied on by Plaintiffs in support of their transfer were known to them well before they instituted their second lawsuit.

We believe that Plaintiffs' tactics in this case amount to a judicial juggling act between forums—one with a clear interest in the litigation and one whose interest is nominal at best. The only nexus between Plaintiffs' claims and Mississippi is that the Defendant Company is registered to conduct business there, has a designated agent for service of process in that state and actually transacts some business in Mississippi. On the other hand, Plaintiffs are residents of Pennsylvania, and the claim arose in Pennsylvania directly as a result of Defendant's having conducted business within that state. Regarding the choice of law issue, even under the "center of gravity" test adopted in *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968), we find that Pennsylvania substantive law would govern this dispute.

Implicit in the holding of *Van Dusen* is the rationale that § 1404(a) is simply a judicial housekeeping device to assure convenience and fairness to the parties. Further, we are mindful that a transfer under § 1404(a) must be "in the interest of justice." Therefore, under the facts of this case, we refuse to allow Plaintiffs to transform § 1404(a) into a device which would enable them to forum shop for a favorable limitation period. *Kaiser v. Mayo Clinic*, 260 F.Supp. 900, 907 (D.Minn.1966). Since Plaintiffs were fully aware of all the relevant facts at the time they commenced both actions, including the fact that the Southern District of Mississippi was an inconvenient forum, the " 'interest of justice' would be thwarted rather than served if this Court permitted this type of 'legal footwork'." *Mata*, 44 F.R.D. at 226–27 (citations omitted).

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiffs' tort claims which are barred by the limitation period of 42 Pa.C.S. § 5524(2).