Larry G. KING, Plaintiff–Appellant,

v.

OTASCO, INCORPORATED, et al.,
Defendants–Appellees.

No. 87–4773.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1988.

Harris Bell Williams, Pascagoula, Miss., J.K. Morett, Morett and Thorne, Tupelo, Miss., for plaintiff-appellant.

David L. Sanders, Peter W. Cleveland, Columbus, Miss., for Otasco, Inc.

John S. Hill, Tupelo, Miss., for Smith.

Before THORNBERRY, RUBIN, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This case presents three issues. The first is whether a state's statute of limitations should be applied separately to each of the claims stated in a complaint or to the "essence" of the allegations considered as a whole. We hold that the statute of limitations applies to each claim, not merely to the pith of the litigation. The second issue is whether a father's failure to specify in a notice of appeal that he is suing as his children's next friend deprives an appellate court of jurisdiction over an appeal of the dismissal of the children's claims. We hold that it does not. The third issue is whether children who allege that they were left essentially unsupervised in a mobile home for almost three days as a result of the negligently-caused arrest of their father have stated a claim under California law for negligent infliction of emotional distress. We hold that they have stated a claim sufficient to withstand a motion to dismiss.

I.

Plaintiff Larry G. King alleges that on or about September 15, 1984, he bought a stereo and other items valued at about $300.00 from an Otasco store in Borger, Texas on open account. In December, King moved to Taft, California, and shortly thereafter paid his account balance in full. On Friday, May 1, 1985, the Taft police stopped King while he was driving home with his children because his automobile tail light was inoperative. In a routine check the police found that a warrant for King's arrest had been issued from Borger, Texas. The police then arrested King, handcuffed him, transported him to Bakersfield, California, and imprisoned him. The law enforcement officers escorted King's children to his mobile home and left them under the occasional supervision of his landlord. They kept King in custody until Sunday when Otasco notified the Bakersfield authorities that he had paid his account in full and that charges had been dropped.

Some time later, King moved to Mississippi where he filed this suit. In it he maintained that Otasco and its employee Jerry Smith—or perhaps Floyd Smith or the employees of Oklahoma Tire and Supply Company—had issued the warrant for his arrest and were responsible for failing to withdraw it. Instead of making a simple negligence claim, however, King fired a barrage of charges. He asserted separate causes of action for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, negligently causing the arrest of another, negligent infliction of emotional distress, and, as further separate causes of action, actual damages, humiliation and suffering, physical injury, and loss of companionship of minor children. As next friend on behalf of his children, King added claims for "loss of companionship/consortium" and negligent infliction of emotional distress.

Instead of examining whether the statute of limitations had run with regard to each of the separate claims King asserted in his own right, the district court looked to what it deemed "the essential nature" of these allegations. The court determined that in essence King was asserting claims for the intentional tort of malicious prosecution, and that Mississippi's one-year statute of limitations for intentional torts therefore barred all of his claims. The court further determined that California law governed the substantive claims King asserted on behalf of his children and dis-

missed these claims as not cognizable under California law.

## II.

■ Because this diversity suit was filed in Mississippi, Mississippi law determines which state's law applies.[1] Mississippi applies its own statute of limitations to claims arising in other states,[2] and its limitations period for malicious prosecution and other intentional torts is one year.[3]

King asserts that, because he alleges both intentional and negligent torts, Mississippi's one-year statute of limitations cannot bar all of his claims. In his view, only Mississippi's six-year statute of limitations for negligent torts[4] applies to his claims for negligent infliction of emotional distress and for negligently causing physical and economic harm.

■ In a diversity suit a federal court must analyze a statute of limitations defense in three separate steps. First, if it might make a difference, the court must determine which state's substantive law applies to the plaintiff's claims. Second, the court must identify each cause of action the plaintiff asserts that is cognizable under the governing law. Finally, the court must apply the appropriate statute of limitations to each of the causes of action. Because King's allegations would be considered to include both negligent and intentional torts under the law of any state, we proceed directly to the second and third steps.

■ When a suit alleges several distinct causes of action, even if they arise from a single event, the applicable limitations period must be determined by analyzing each cause of action separately. As the Mississippi Supreme Court has stated, "Where a party has two or more remedies for enforcement of a right, the fact that one remedy is barred by the statute of limitations does not bar the other remedies."[5] Therefore, King's allegations of intentional torts cannot cancel his allegations of negligence.

The gestalt approach adopted by the district court might cause a number of significant problems. First, a court's determination of the "essence" of the plaintiff's claims is likely to be highly metaphysical—indeed, it is by no means clear that characterizing King's claim as "malicious prosecution" rather than negligence, false imprisonment, or even bad-faith debt collection, captures the one true "essence" of this case. Second, if the district court's approach were adopted, plaintiffs bringing suit after the statute of limitations for intentional torts had run would be forced either to forego any suggestion that the defendant's tortious conduct was intentional or to risk the dismissal of all of their claims. This result is directly contrary to the principle that the statute of limitations is an affirmative defense that is waived unless it is pleaded.[6] Finally, even if the district court's approach deterred plaintiffs anxious to preserve their negligence claims from alleging intentional torts in their initial complaints, it would not prevent them from attempting to add intentional-tort claims by amendment. Because the statute of limitations is an affirmative defense, it would not inhibit these motions to amend. The "essence-of-the-case" approach therefore might cause a great deal of unnecessary motion practice.

■ Plaintiffs, of course, cannot be allowed to obtain trials for intentional tort claims after the statute of limitations has barred them merely by engaging in artful pleading. This principle underlies the

1. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4506.

2. *Cowan v. Ford Motor Co.,* 719 F.2d 785 (1983); *Louisiana and Mississippi R. Transfer Co. v. Long,* 159 Miss. 654, 131 So. 84 (1930).

3. Miss.Code Ann. § 15–1–35 (Supp.1987).

4. Miss.Code Ann. § 15–1–49 (1972).

5. *Hutchinson v. Smith,* 417 So.2d 926, 928 (Miss. 1982); *see also In re Whittington's Estate,* 217 Miss. 457, 64 So.2d 580 (1953).

6. *See, e.g., Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 900 (Miss.1981).

cases relied on by the district court.[7] If, however, a claim can plausibly withstand a motion to dismiss or for summary judgment, it cannot be treated as a mere rewording of a barred claim. Instead, therefore, of probing for the essence of King's suit, the district court should have analyzed each of his claims on its own merits.

Under Mississippi law, "[t]he policy ... has been to provide a short one-year statute of limitations for listed intentional torts and a long six-year statute of limitations for 'case' actions."[8] The listed intentional torts are:

> "[a]ll actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words ... and for libels ..."[9]

■ King's claims are of four types. First, he alleges false imprisonment and false arrest, both of which are intentional torts expressly listed in the Mississippi one-year statute. King's "claims" for humiliation and suffering, actual damages, physical injury, and loss of companionship, on the other hand, are not causes of action at all but simply specifications of damage. The claims for intentional infliction of emotional distress and outrageous conduct are of a third kind: although not explicitly listed in the one-year statute, they are undoubtedly intentional torts, and so closely analogous to the common law actions for assault, libel, and slanderous words that they too must fall within the statute's bar. King's remaining causes of action for negligent infliction of emotional distress and negligently causing the arrest of another fall into a final category. They do not charge intentional torts, and are more analogous to common law "case" actions than to trespass actions. Accordingly, Mississippi's one-year statute of limitations does not bar them. In so holding, of course, we express no opinion concerning the merits of these claims.

## III.

■ The district court dismissed the claims King asserted on behalf of his children because he had failed to state a claim for which relief might be granted. In a letter that we treat as a motion to dismiss for lack of subject matter jurisdiction, Otasco asserts that King's notice of appeal failed to comply with Federal Rule of Appellate Procedure 3(c) because he did not name his children in the notice, and that this court therefore lacks jurisdiction to hear the children's appeal under the Supreme Court's recent decision in *Torres v. Oakland Scavenger Co.*[10] Consequently, before turning to the merits of the children's claims, we must first determine our jurisdiction.

In *Torres,* the petitioner was one of sixteen plaintiff intervenors in a complaint seeking class action status that was dismissed prior to class certification. The plaintiffs filed a timely notice of appeal as required by Fed.R.App.P. 3(c) naming fifteen plaintiffs and concluding "et al." However, the notice excluded Torres' name because of his lawyer's secretary's inadvertence. Although Rule 3(c) provides that an appeal "shall not be dismissed for informality of form or title of the notice of appeal," the Court noted that the rule requires litigants to "specify the party or parties taking the appeal," and held, "[t]he failure to name a party in a notice of appeal is more than excusable 'informality;' it constitutes a failure of that party to appeal."[11] The Court further held that the appellants' use of "et al." in the notice of

---

**7.** *Kipnis v. Antoine,* 472 F.Supp. 215, 219 n. 6 (N.D.Miss.1979); *Childers v. Beaver Dam Plantation, Inc.,* 360 F.Supp. 331 (N.D.Miss.1973); *Dennis v. Travelers Insurance Co.,* 234 So.2d 624 (Miss.1970). *Ballard v. Taylor,* 358 F.Supp. 409, 411 (N.D.Miss.1973) states only that, "[t]o determine which limitations period the state would apply, the court must first look at the essential nature of the allegations." The words "the essential nature of" in this statement are unnecessary to its meaning in context.

**8.** *Southern Land & Resources Co. v. Dobbs,* 467 So.2d 652, 655 (Miss.1985).

**9.** Miss.Code Ann. 15–1–35.

**10.** —— U.S. ——, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988).

**11.** *Id.,* 108 S.Ct. at 2407.

appeal "utterly fail[ed]" to remedy the problem.[12] Although it "recognize[d] that construing Rule 3(c) as a jurisdictional prerequisite leads to a harsh result," the Court was "convinced that the harshness of [its] construction [was] 'imposed by the legislature and not by the judicial process.' "[13]

Harshness may sometimes be inescapable, but no one would suggest that we employ it as a guiding principle. This case differs from *Torres* in two fundamental respects. First, *Torres* may have purported to be a representative action, but it had not become one in fact. Indeed, the Supreme Court left open the question whether Torres could rejoin his co-plaintiffs as a represented party in a certified class action.[14] In the instant case, however, King's children did not sue as independent parties; King sued in the children's behalf as their representative and next friend. Thus, this case does not concern the omission of a party from a notice of appeal, but only a party's failure to designate all of the *capacities* in which he brought suit. Second, the appellee in *Torres* could not have known that Torres desired to appeal except by construing "et al." to include him. Here, in contrast, the notice warns even without the Latin abbreviation that King, who sued both in his individual capacity and as next friend of his minor children, desired to appeal. We therefore have jurisdiction to review the dismissal of the children's claims, and we need not decide the further question whether *Torres* applies retroactively to cases in which the notice of appeal was filed before *Torres* and in compliance with the law of this circuit at the time.

■ In determining whether King's complaint on behalf of his children can survive a motion to dismiss for failure to state a claim, we first must determine by which substantive body of law it is to be appraised. Mississippi uses the "center of gravity" test to determine the applicable state substantive law, and accordingly applies the law of the state with the most significant relationship to the parties and the occurrence.[15]

Although the warrant for King's arrest was initiated in Texas, it was issued in California. Moreover, King was arrested in the presence of his children in California, and he and his children were California residents at the time. The district court therefore properly held that, because California had the most significant relationship to the children's claims, its substantive law should control.

■ Although the district court's opinion did not discuss the point, the court correctly dismissed King's children's claim for loss of parental consortium. California has refused to recognize such a cause of action.[16]

■ King also asserts, however, that his children's distress at his arrest was sufficiently foreseeable that they can recover for negligent infliction of emotional distress. California has long permitted recovery for negligent infliction of emotional distress,[17] but its jurisprudence on the subject is far from clear. The cases are roughly divisible into two categories: "bystander" cases, such as *Dillon v. Legg*,[18] in which a plaintiff became distressed because he witnessed the death or physical injury of a loved one, and "direct victim" cases such as *Molien v. Kaiser Foundation Hospitals*,[19] in which a husband was allowed to sue a doctor who had negligently misdiagnosed his wife as having venereal disease.

A bystander plaintiff typically can recover only by meeting specific foreseeability

---

12. *Id.*, 108 S.Ct. at 2409.

13. *Id.*, (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986)).

14. *Id.*, 108 S.Ct. at 2409 n. 3.

15. *Boardman v. United Services Auto Ass'n*, 470 So.2d 1024, 1031 (Miss.1985).

16. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977).

17. *See, e.g., Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968).

18. *Id.*

19. 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).

criteria derived from the following passage in *Dillon v. Legg:* [20]

> (1) Whether plaintiff was located near the scene of the accident ... (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident ... (3) Whether plaintiff and the victim were closely related ... [21]

A direct victim, on the other hand, apparently must demonstrate only that his distress was genuine, serious, and foreseeable. [22]

King's children's claim is on the margin between these two categories, and unfortunately, as a California appellate court wryly complained, "the [California Supreme Court] gave no indication of the meaning of 'direct victim' for plaintiffs other than Mr. Molien. The unenviable tasks of distinguishing bystander from direct victim cases and establishing limits for the latter have been left to the lower courts with a 'foreseeable' diversity of results." [23]

It is possible, as the district court held, that the California courts would deny bystander recovery to King's children as a matter of law because they did not witness "an extreme physical injury" to their father. Even if this is correct, however, King's children have at least stated a claim for relief that might be cognizable under *Molien* and subsequent cases.

The *Molien* line of cases demonstrates that the victim of a negligently-caused, foreseeable, and severe emotional injury can recover under California law. "[T]he trier of fact determines whether a defendant's conduct satisfies the applicable standard of care," and "[w]hen reasonable minds may differ as to the reasonableness of the defendant's conduct, neither the trial court nor an appellate court may substitute its own judgment." [24] Furthermore, "[f]or-

eseeability, like reasonableness, is a question of fact for the jury." [25]

It is possible that King's children will be unable to demonstrate either that they suffered severe emotional injury due to their father's arrest or that their injury was foreseeable. At this early stage, when only the notice pleadings may be considered, however, we cannot say that the children would be completely unable to substantiate their claims. Absent facts concerning the children's treatment during their father's imprisonment, for example, it is impossible to determine whether their distress was severe. Nor can we say as a matter of law that any distress they may have suffered was unforeseeable. From the defendant's point of view the children's injury may well appear fortuitous, but any arrest is bound to have familial repercussions, and California grants recovery to plaintiffs who, equally fortuitously, happen to be present when their relatives are injured in a car crash. Thus, although the facts when ultimately proven may demonstrate that the children's injury was unforeseeable, so long as reasonable minds may differ on the question, foreseeability is for the jury to decide. Of course, our ruling on the motion to dismiss does not preclude summary judgment if the evidence removes the decision from the area of reasonable disagreement.

For these reasons, the judgment of the district court is AFFIRMED insofar as it dismisses all of King's claims except those alleging negligent causation of an arrest, negligent causation of physical and economic harm, and negligent infliction of emotional distress. With respect to those claims, the judgment of dismissal is REVERSED. The judgment dismissing King's children's claim for loss of consortium is AFFIRMED, but the judgment dis-

**20.** *See Ochoa v. Superior Court,* 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985).

**21.** *Dillon,* 69 Cal.Rptr. at 80, 441 P.2d at 921.

**22.** *See Molien,* 27 Cal.3d at 916, 167 Cal.Rptr. at 831, 616 P.2d at 813.

**23.** *Newton v. Kaiser Hospital,* 184 Cal.App.3d 386, 228 Cal.Rptr. 890, 892 (1986).

**24.** *Pool v. City of Oakland,* 42 Cal.3d 1051, 232 Cal.Rptr. 528, 532–33, 728 P.2d 1163, 1167–68 (1986).

**25.** *Id.,* 42 Cal.3d at 1062, 232 Cal.Rptr. at 534, 728 P.2d at 1169.

missing their claim for negligent infliction of emotional distress is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

## PATRICK E. HIGGINBOTHAM,
Circuit Judge, concurring in part, and dissenting in part:

I join the majority's fine opinion with respect to Part I, Part II, and the disposition of the *Torres* question in Part III. I must, however, depart from the majority's analysis of California tort law in Part III.

King's children wish to recover for the negligent infliction of emotional distress. California law recognizes two categories of such claims. The first consists of those claims arising under *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). *Dillon* permits recovery by those who suffer "emotional trauma" as the result of witnessing a tort against another. *See Ochoa v. Superior Court*, 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1, 5 (1985). The California Supreme Court has, however, limited *Dillon* to cases in which the plaintiff witnesses both the defendant's tortious conduct and the resulting injury: "when there is observation of the defendant's conduct and the ... injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm ..., recovery is permitted." 216 Cal.Rptr. at 668, 703 P.2d at 8.

The second category of claims consists of those made by "direct victims," and arising out of *Molien v. Kaiser Foundation Hospital*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980). In *Molien*, the California Supreme Court permitted recovery by a man against a doctor who had negligently misdiagnosed the man's wife as having a venereal disease. The *Molien* Court held that the plaintiff could recover because he was a "direct victim" of the doctor's negligence, for the doctor had instructed the wife to inform her husband of the doctor's diagnosis. Although the California courts have not articulated an exact definition of "direct victim" status, they have made clear that relief under *Molien* is available only if the defendant's action is "by its very nature" directed at both the plaintiff and the immediate victim. *Ochoa*, 216 Cal. Rptr. at 679, 703 P.2d at 10.

King's children have not stated a claim under either of these theories. They did not witness the allegedly negligent acts of Otasco, and so do not qualify as *Dillon* plaintiffs. They have in no way alleged that Otasco knew or intended that its acts affect them; they thus have not made out a claim that Otasco's acts were "by their very nature" directed against them, and so do not qualify as *Molien* plaintiffs.

The majority, however, generalizes *Molien* to permit recovery when emotional injury is negligently caused, foreseeable, and severe. As a result, the majority concludes that the children's allegation survives a motion to dismiss. The majority's test eviscerates the doctrinal categories established by *Dillon* and *Molien*, and eliminates the requirement that a *Molien* plaintiff be a direct victim. That victims falling outside the *Molien* and *Dillon* categories cannot recover may seem illogical. Members of the California Supreme Court have themselves said so. *See Ochoa*, 216 Cal. Rptr. at 674–75, 703 P.2d at 14–16 (Grodin, J., concurring); 216 Cal.Rptr. at 682–83, 703 P.2d at 22–23 (Bird, C.J., dissenting). It may perhaps be desirable to dispense with the "artificial distinctions" arising out of *Molien* and *Dillon*. If so, it may perhaps be desirable to do so along the lines developed by the majority. Chief Justice Bird so suggested in her *Ochoa* dissent. 216 Cal.Rptr. at 683, 703 P.2d at 23. But Chief Justice Bird made her suggestion *in dissent*—indeed, authored her dissent— precisely because the *Ochoa* majority refused to do what she then urged and what the Fifth Circuit now does. The *Ochoa* majority preserved the rules of *Molien* and *Dillon*. *See* 216 Cal.Rptr. at 674–76, 703 P.2d at 14–16 (Grodin, J., concurring) (discussing future of the *Molien* and *Dillon* rules).

*Pool v. City of Oakland*, 42 Cal.3d 1051, 232 Cal.Rptr. 528, 728 P.2d 1163 (Cal.1986), on which the majority relies, in no way alters this analysis. In *Pool*, the plaintiff sued Safeway for negligently prosecuting

him. There can be no doubt that the plaintiff was the direct—in fact, the *only*—victim of Safeway's negligence. *Pool* did not involve a "third-party plaintiff" of the sort present in *Dillon, Molien,* and the instant case.

Because I am unable to reconcile the majority's opinion in this case with the *Ochoa* majority's clear rejection of Chief Justice Bird's position, I respectfully dissent.