United States Court of Appeals,

Fifth Circuit.

No. 94-60069

Summary Calendar.

Kay J. BURROUGHS, Plaintiff-Appellee,

v.

FFP OPERATING PARTNERS, L.P., Defendant-Appellant.

Aug. 17, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

FFP Operating Partners, L.P. ("FFP"), appeals the district court's denial of its motion for judgment as a matter of law ("j.m.l.") and, in the alternative, motion for new trial on intentional infliction of emotional distress ("i.i.e.d.") and slander jury verdicts. Concluding that the district court erroneously denied FFP's motion for j.m.l. on the i.i.e.d. claim but correctly denied FFP's motion for j.m.l. on the slander claim, we affirm in part, reverse in part, and remand for a redetermination of damages.

I.

A.

Kay Burroughs worked until August 28, 1989, for FFP as manager of one of its convenience stores in Forest, Mississippi. After a visual inspection of the store on August 16, 1989, John Rochelle, FFP's vice-president of operations, and Ed Bradley, supervisor of

1

the Mississippi stores, believed the store's physical inventory to be far less than Burroughs's books represented. The discrepancy was attributed to generic, non-logo beverage cups stored in an out-building behind the store, and Rochelle and Bradley ordered the cups destroyed and written off the inventory.

Six days later, an independent auditor made a physical count of the inventory and found a further deficit in physical inventory of $16,385. Believing the non-logo cups to be a sign of theft,[1] Bradley investigated the shortage further by contacting Cochran-Sysco, a food service supplier for the store's deli section. Robert Ratliff, a credit manager at Cochran-Sysco, produced copies of invoices, paid for in cash, for about 32,950 generic cups purchased between February 1988 and August 1989.

Bradley returned to the store on August 28 to discuss with Burroughs the Cochran-Sysco invoices. Whether Burroughs was fired by Bradley at this meeting or quit was contested at trial, but it was uncontested that Burroughs's employment with FFP ended on August 28. Later that day, Bradley discovered approximately $3,800 missing from the store safe. The facts at trial did not establish that Burroughs had taken this money; there remained an unexplained

---

[1]As FFP explained in its brief, the "cup scam" involves a manager's purchasing and placing into the store's inventory, without the company's knowledge, non-logo cups. If the non-logo cups are not logged into the book inventory, the manager may take the amount of the overage in the physical inventory in the form of merchandise or cash. To protect against the cup scam, FFP requires its managers to purchase logo-bearing cups only, and the inventory value of each cup is then logged into the book inventory at the retail value of the beverage that the cup holds.

gap of time between Burroughs's dismissal and the opening of the safe (during which time Bradley was alone in the store).

Bradley and Rochelle spoke with Officer Croxton of the Forest Police Department on August 29 regarding possible embezzlement charges.[2] Croxton then served a warrant on Burroughs, drove her to the station, and released her after she posted bond. At a preliminary hearing before a municipal judge on September 19, the charges against Burroughs were dropped.

FFP later testified to the Mississippi Employment Security Commission ("MESC") and the state welfare department that Burroughs had quit her job. Based upon this testimony, Burroughs originally was denied unemployment benefits and food stamps, but her applications were granted upon further review.

B.

Burroughs filed suit in Mississippi state court on August 24, 1990, alleging malicious prosecution, false imprisonment, false arrest, slander, and i.i.e.d., seeking compensatory damages of $100,000 and punitive damages of $1,000,000. FFP removed the case to federal court.

At trial, FFP presented expert witnesses who testified that the non-logo cups, coupled with cash register receipts, pointed toward Burroughs as the party responsible for the theft, which Burroughs denied. Burroughs's witnesses also testified that Bradley and Rochelle discussed Burroughs's alleged theft with

---

[2]In 1986, Burroughs had reported a theft from her car of $8,400 from the store's account, which she agreed to repay.

3

numerous other parties in the Forest community.

Following a four-day trial, Burroughs withdrew her false imprisonment and false arrest claims, and FFP moved for j.m.l. on the remaining issues. The court denied the motion, and the jury returned a verdict for Burroughs on the i.i.e.d. and slander charges, awarding $250,000 in compensatory damages. The jury found for FFP on the malicious prosecution and punitive damages issues.

FFP renewed its motion for j.m.l. or, in the alternative, for a new trial or remittitur. The district court denied these motions, and FFP appeals.

## II.

### A.

We review the denial of j.m.l. *de novo, Omnitech Int'l v. Clorox Co.,* 11 F.3d 1316, 1322 (5th Cir.1994), *petition for cert. filed* (U.S. May 25, 1994) (No. 93-1927), viewing all evidence in the light most favorable to the non-moving party, *Becker v. PaineWebber, Inc.,* 962 F.2d 524, 526 (5th Cir.1992). We will grant the motion where "the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech,* 11 F.3d at 1323. Because this is a diversity case, we apply the substantive law of Mississippi. *Erie R.R. v. Tompkins,* 304 U.S. 64, 80, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938).

### B.

In Mississippi, in order to recover for i.i.e.d., a plaintiff must prove that defendant's conduct is "extreme and outrageous."

4

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*White v. Walker,* 950 F.2d 972, 978 (5th Cir.1991) (discussing the court's citation with approval in *Lyons v. Zale Jewelry Co.,* 246 Miss. 139, 150 So.2d 154, 158 (1963), of comment d to § 46 of the RESTATEMENT (FIRST) OF TORTS).

Though plaintiff need not prove cognizable physical injuries, *Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 902 (Miss.1981), the emotional stress must be genuine and severe, RESTATEMENT (SECOND) OF TORTS § 46, cmt. k (1965). Absent physical manifestation of the injury, plaintiff may recover where the nature of the act is so egregious as to evoke "outrage or revulsion." *Sears,* 405 So.2d at 902.

Burroughs proffers four arguments in support of the outrageous nature of FFP's actions. She first asserts that Rochelle's failure to contact her prior to initiating the original criminal proceedings is evidence of outrageous behavior. FFP concedes that Rochelle did not contact Burroughs between the time of her firing (August 28) and his filing of embezzlement charges (August 29). Nevertheless, uncontroverted evidence supports FFP's contention that Rochelle contacted Burroughs as early as August 16 seeking an explanation for the inventory shortages. Bradley also returned to the store on August 28 to discuss with Burroughs the

5

Cochran-Sysco cash invoices.

In light of the circumstances, we are unpersuaded that Rochelle's actions are sufficiently improper so as to be outrageous. First, as mentioned above, Rochelle and Bradley personally inspected the store on August 16, at which time they became aware of the presence of non-logo cups. Second, Rochelle's and Bradley's personal knowledge of the prevalence of criminality in convenience stores associated with non-logo cups provided a reasonable suspicion of foul play.

Third, Rochelle commissioned an internal auditor who made a physical count of the inventory on August 22, revealing more than a $16,000 discrepancy between the book and the physical inventories. Fourth, all of the investigations occurred on the backdrop of the 1986 reported theft of $8,400 from Burroughs's car, monies she was repaying in installments at the time. Fifth, the circumstances surrounding Burroughs's firing,[3] make more reasonable Rochelle's decision to file embezzlement charges on August 29 without contacting Burroughs further. Finally, leaving aside the question of whether Burroughs was responsible for the money missing from the safe on August 28, the fact that the money was missing supports Rochelle's decision to proceed with legal action.

We do not believe that the municipal judge's decision to quash the embezzlement charges at the September 19 preliminary hearing

_____

[3]While the question of whether Burroughs was fired or quit is disputed, all of the witnesses to the August 28 meeting between Bradley and Burroughs testified to the contentious nature of the meeting.

undermines the non-outrageous nature of FFP's behavior.  Even if we were to construe the quash order as such, FFP's decision to bring charges does not rise to the level of "atrocious" and "utterly intolerable in a civilized society."  To find otherwise would be to suggest that all decisions not to prosecute would give rise to intentional tort claims;  a finding of inadequate probable cause to proceed with criminal charges does not connote malicious and outrageous behavior.  Furthermore, this conclusion is supported by the jury verdict in favor of FFP on the malicious prosecution charge.

Next, Burroughs contends that FFP's statements to both the MESC and the welfare department that Burroughs had quit her job are sufficient to support a finding of i.i.e.d.  We begin by noting that, absent contractual language to the contrary, Mississippi confers at-will employment status on employees.  *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1088 (Miss.1987).  As such, a worker may be terminated for good reason, wrong reason, or no reason at all.  *Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874, 875 (Miss.1981).  Although Mississippi has just recently adopted a narrow "public policy" exception to at-will termination, *McArn v. Allied Bruce-Terminix Co.,* 626 So.2d 603, 607 (Miss.1993), the Mississippi Supreme Court has refused to extend further an implied covenant of good faith and fair dealing to employment terminations.  *Perry,* 508 So.2d at 1089.  Hence, even though Burroughs appears to base her i.i.e.d. claims solely upon FFP's alleged accusations of her stealing and not on a wrongful termination charge, we note that

7

Mississippi law does not recognize a wrongful termination action for Burroughs in tort.

We conclude that FFP's statements to these organizations are not sufficiently outrageous to support the i.i.e.d. claim. First, qualified privilege attaches to statements made by an employer against an employee that affect the latter's employment. *Benson v. Hall,* 339 So.2d 570, 572 (Miss.1976). Absent spite, ill will, malicious purpose, or wanton disregard for the veracity of the statements, and where the communications are limited to those persons who have a legitimate and direct interest in the subject matter, the communications are privileged, and a presumption of good faith attaches. *Id.* (citing *Killebrew v. Jackson City Lines,* 225 Miss. 84, 82 So.2d 648 (1955)).

Since both the MESC and state welfare department have a legitimate and direct interest in the subject matter of the statements made by FFP,[4] FFP's utterances to these organizations are subject to qualified privilege. The question then remains whether FFP's statements exhibited bad faith and malice.

We believe that the evidence presented at trial does not support such allegations. First, FFP's belief as to Burroughs's criminal activity was sufficiently reasonable to defeat any bad faith and malice claims. We agree with FFP that, in light of the circumstances, it had a right to present its side of the story to these agencies, assuming no ill will or spite toward Burroughs. Second, the jury findings in favor of FFP on the malicious

---

[4]In fact, FFP was subpoenaed by the MESC to testify.

8

prosecution and punitive damages interrogatories support the non-malicious nature of FFP's statements. The jury's failure to award punitives suggests that it could not find bad faith sufficient to justify punishing FFP. *Jones,* 617 F.Supp. at 1547.

Finally, even assuming that FFP's communications to the MESC and welfare department were malicious and thus not privileged, they do not rise to the level of outrageousness sufficient to support an i.i.e.d. claim. As discussed previously, FFP made a reasonable investigation in light of the circumstances as they appeared to FFP at the time.

Burroughs's third statement in support of the i.i.e.d. verdict is that she was refused employment at another convenience store because the owner had heard of the theft allegations promulgated by FFP. Kenneth Warren, the owner of a local convenience store, testified that he refused to hire Burroughs as a result of having heard "rumors" of Burroughs's alleged theft. Warren could not identify from whom he had heard such rumors, testifying instead that small towns such as Forest lend themselves to the spreading of rumors through "just talk."

Warren's decision not to employ Burroughs is insufficient to support the i.i.e.d. verdict. First, Warren was unable to testify on direct examination as to the source of the rumor. If the rumors stemmed from the statements made by FFP to the municipal court, the MESC, or the welfare department, we would extend to them the same privilege as discussed previously. If the rumors stemmed from the missing $8,400 from 1986, the veracity of such rumors is

9

unquestioned. If the rumors were promulgated by the two witnesses to the August 28 meeting between Bradley and Burroughs, the spreading of the rumors to Warren are not the fault of FFP.

It is important to note that in her supporting brief, Burroughs expressly separates the rumors relied upon by Warren from those allegedly made by Bradley to other Forest residents. We discern from this separation that Burroughs does not allege that these latter representations were the basis for the rumors heard by Warren. Rather, the source must be any of the former categories discussed above, which sources would not implicate FFP for misconduct.[5]

Notwithstanding the source of the rumors, FFP's actions are not sufficiently outrageous as a matter of law so as to be utterly intolerable in a civilized community. Based upon Bradley's and Rochelle's personal investigations, the demonstrated inventory shortages, and the $8,400 reported stolen by Burroughs, FFP had sufficient suspicion of illegal activity to support its allegations.

Burroughs's final argument to sustain the i.i.e.d. verdict is that FFP made repeated false accusations against Burroughs in the presence of other customers, vendors, and store employees. For purposes of this analysis, we distinguish the testimony of Dorothy

---

[5]The testimony of Sandra Walker, an employee at the convenience store, supports the contention that the rumors were based upon the original charges made to the municipal court: "Kay Burroughs got arrested for stealing, you know, stealing from the store, because she was arrested they automatically assume guilt."

10

Goolsby, another employee of the FFP store, from that of Jimmy Putnam, the owner of a competing store, and Sandra Walker, also an employee of the FFP store.

We find that Goolsby's testimony is insufficient to uphold the i.i.e.d. verdict. On both direct and cross-examination, Goolsby gave uncontroverted testimony that the statements made by FFP representatives regarding Burroughs were part of their investigation of the alleged criminal activity. Goolsby testified that FFP asked her whether she thought Burroughs had been stealing from the store; FFP did not accuse Burroughs, in Goolsby's presence, of stealing monies.

The investigative nature of the conversations are bolstered by the time frame in which the statements were made. Goolsby established on cross-examination that she was asked about Burroughs only during the two weeks immediately following Burroughs's dismissal and only in her capacity as an employee of the store. Hence, given our previous discussion of the reasonableness of FFP's suspicion, the conversations with Goolsby were investigative in nature and thus not outrageous.[6]

---

[6]*See White,* 950 F.2d at 978 (applying Mississippi tort law to find that a police officer's statements to an underage driver were not outrageous, in part owing to the fact that the statements were made in the context of "a legitimate police function"); *see also Davidson v. State Farm Fire & Cas. Co.,* 641 F.Supp. 503, 511 (N.D.Miss.1986) (concluding that where the insurance company had made an independent investigation of the cause of the fire, its decision to deny benefits was not outrageous); *cf. Lyons,* 246 Mass. 139, 150 So.2d at 162 (holding that where defendant verbally abused and threatened mother for purposes of enforcing a debt owed by her son to defendant, the conversation was entirely inflammatory and non-investigative).

FFP's statements to Putnam and Walker, however, were not investigative in nature. The conversation with Putnam occurred independently of FFP's investigation of Burroughs—Putnam had stopped at the store to purchase gas, and Burroughs's name was mentioned first by Putnam. Most telling about the conversation is Putnam's uncontroverted testimony that Rochelle said, "I'm going to see [Burroughs's] not going to work around here anymore."

Walker's testimony is similarly on point. He stated that Bradley, Rochelle, and John Bernard, another FFP executive, appeared at the store on numerous occasions and accused Burroughs of embezzling from FFP. The conversations were reported to have occurred in the presence of other customers and employees, were repeated over a large span of time, and were accusatory, not investigative, in nature.

To determine whether these statements are sufficient to sustain the i.i.e.d. verdict, we would need to decide whether a reasonable jury could have found them sufficiently outrageous under Mississippi law. We need not reach this issue, however, for, as we explain in the next section, Burroughs's emotional injuries were not severe enough to meet the standard for i.i.e.d.

### C.

Mississippi courts allow damages for intentional torts even where they are not accompanied by physical or bodily injury. *Devers,* 405 So.2d at 902. "In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress." *Id.* "The law

12

intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  RESTATEMENT (SECOND) OF TORTS § 46, cmt. j.

Burroughs did not allege physical injuries.  The words used to describe her emotional injuries include:  jittery, upset, unnerved, depressed, crying, emotional, mortified, terribly upset, bothered tremendously, and very badly hurt.  Others testified as to Burroughs's poor church attendance in the period following the incidents of this case and to her overall lower level of participation in community affairs.  She did not offer medical testimony describing any clinical manifestations of depression or other mental infirmities.  Such emotional injuries are insufficient to sustain damages for i.i.e.d.  *Compare Lyons,* 246 Mass. 139, 150 So.2d at 155 (holding plaintiff's allegations of extreme nervousness and severe headaches, such that she was physically and emotionally unable to work and earn her livelihood, sufficient to withstand a demurrer) *with Jones,* 617 F.Supp. at 1545 (holding plaintiff's testimony that he suffered nightmares, could not sleep, and required medical attention for his hypertension insufficient, in the absence of corroborative medical testimony, to sustain jury verdict for i.i.e.d.).

As a matter of law, Burroughs's emotional injuries were not severe enough to meet the standard for i.i.e.d.  We therefore reverse the jury verdict on the i.i.e.d. claim and grant FFP's motion for j.m.l. on that claim.

III.

13

FFP next asks this court to reverse the judgment in favor of Burroughs on the slander count. FFP challenges on appeal the falsity element only. We begin by referencing our previous discussion regarding privileged communications and note that we restrict our discussion of slander to non-privileged communications only.

A claim of slander includes the following elements:

1. a false and defamatory unprivileged statement concerning Burroughs made to a third party;

2. that FFP was at least negligent when it made these statements;

3. either actionability irrespective of special harm or the existence of special harm.

*See Blake v. Gannett Co.,* 529 So.2d 595, 602 (Miss.1988) (citing *Chatham v. Gulf Pub. Co.,* 502 So.2d 647, 649 (Miss.1987)).

The plaintiff has the burden of proof as to the element of falsity. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). Truth is a complete defense to an action for slander. *Fulton v. Mississippi Publishers Corp.,* 498 So.2d 1215, 1217 (Miss.1986).

Burroughs offers several pieces of evidence in support of the jury verdict in her favor. On the element of falsity, Burroughs points out that (1) the original charges of embezzlement were dismissed by the municipal judge; (2) FFP presented no witnesses to the theft; (3) there was no evidence of Burroughs's improved finances during the time in which she was alleged to have stolen; (4) cash overages were found while Burroughs was managing the store, and cash shortages were reported after her having left

14

management of the store; and (5) Burroughs alleged that Bradley attempted to frame her for theft.

We agree with FFP that the municipal judge's decision to drop the embezzlement charges does not evidence the falsity of FFP's allegations. On its face, the ruling amounted to a finding of insufficient evidence, at the time of the hearing, to hold Burroughs over for a grand jury hearing. Second, FFP's failure to produce witnesses to the alleged crime does not support the slander claim. In order to defend against slander, FFP has no burden to produce witnesses to the crime.

FFP did, however, present the testimony of two experts who opined that Burroughs was responsible for the theft at the store. Although Burroughs's counsel attempted to discredit the experts by exposing their financial relationships to FFP, much of their direct testimony went unchallenged.

"The general rule is that opinion testimony of expert witnesses is not of controlling effect, and a jury is not absolutely required to accept opinions of experts in place of its own judgment." *New York Life Ins. Co. v. Johnston,* 256 F.2d 115, 118 (5th Cir.1958). We are unable to say that a reasonable juror could not have exercised his independent judgment against the opinion of the experts. The jury heard Burroughs's testimony in which she unequivocally denied having stolen money from the store, and Burroughs presented circumstantial evidence suggesting that Bradley was attempting to frame Burroughs for the theft. Furthermore, the jury's decisions in favor of FFP on the malicious

15

prosecution and punitive damages charges are insufficient to overturn the verdict.

In light of the evidence presented at trial, therefore, we affirm the denial of FFP's motion for j.m.l. as to the slander claim. We are unable to say that no reasonable juror could have found for Burroughs and are thus bound, by the standard of review, to affirm.

IV.

We review the district court's denial of FFP's motion for new trial under an abuse of discretion standard. *Pagan v. Shoney's, Inc.,* 931 F.2d 334, 337 (5th Cir.1991). We must affirm the verdict unless the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Jones v. Wal-Mart Stores,* 870 F.2d 982, 987 (5th Cir.1989). The district court abuses its discretion only where "there is an "absolute absence' of evidence to support the jury's verdict." *Pagan,* 931 F.2d at 337.

The jury verdict in favor of Burroughs on the slander claim is not against the great weight of evidence and, *a fortiori,* we must affirm the district court's denial of FFP's motion for new trial. Since we have previously reversed the jury verdict in favor of Burroughs on the i.i.e.d. claim, we do not address that claim further.

V.

The judgment is REVERSED on the i.i.e.d. claim, and j.m.l. is hereby granted in favor of FFP. The judgment is AFFIRMED on the

16

slander claim, and the case is REMANDED for determination of the apportionment of the $250,000 jury verdict.