**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-60317
(Summary Calendar)
_____

LISA BOWERS, M.D.

Plaintiff-Appellant,

v.

CHRISTOPHER J. CAMPBELL, M.D.; ANESTHESIA ASSOCIATES OF NORTH
MISSISSIPPI, P.A.

Defendants-Appellees.

- - - - - - - - - -
On Appeal from the United States District
Court for the Northern District of Mississippi
(98-CV-156)
- - - - - - - - - -
February 21, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

This Mississippi employment dispute is before us on diversity
jurisdiction. Plaintiff-Appellant Dr. Lisa Bowers challenges the
district court's (1) grant of the motion of Defendant-Appellee
Anesthesia Associates of North Mississippi ("AANM") for judgment as a
matter of law ("j.m.l.") and a remittitur regarding Dr. Bowers's claims
for consequential damages and damages for emotional distress resulting
from AANM's breach of its employment contract with her and (2) denial

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of Dr. Bowers's motion for a new trial regarding her claim of tortious breach of contract.  In the district court, Dr. Bowers sought damages for employment termination on the ground that the termination violated the terms of her employment contract and did so in a manner that inflicted emotional distress on her.  As we agree with the district court's conclusion that Bowers's claims for damages for emotional suffering and tortious breach of contract are without merit and that she is only entitled to 30 days' compensation for AANM's failure properly to notify her of the termination of her employment, we affirm the rulings of the district court.

## I.  *Facts and Proceedings*

Dr. Bowers was employed as a specialized physician anesthesiologist by AANM, a small anesthesiologist group founded by Drs. James Cook and Christopher Campbell.  After the death of Dr. Cook in 1996, the group was owned solely by Dr. Campbell.  The employment agreement between the parties to this litigation was a one-year contract that "would be extended automatically for successive one year periods" beginning on August 1, up to and including a third year.  It was signed by Dr. Bowers and Dr. Cook.  Dr. Bowers asserts that she began working for AANM with the understanding that she would be made a partner after three years of satisfactory performance.  The contract contained two paragraphs allowing AANM to terminate an employee.  Paragraph 8B states that:

> This contract may be terminated by either party on not less than 30 days advance written notice thereof.  If the employee violates any of the provisions of the contract, the Group may terminate the employment immediately without further

2

obligation except to pay the employee for compensation earned prior to the termination of this contract. However, the medical group may terminate the employment hereunder immediately if, in their best judgment, it is necessary to protect its business or good name. . . .

Paragraph 8D provides that:

This agreement shall automatically terminate at any time, if, in the sole judgment of the Group, employee becomes unfit to properly perform the duties set out in the Work Agreement or employee is deemed unfit for reasons including but not limited to interpersonal relation difficulties with other employees or members of the Group, or if Anesthesiologists skills are found to be severely lacking and patient care is unacceptable. . . .

Dr. Bowers contends that when a colleague was denied partnership after completing the third of his three one-year contracts, she became concerned for her own future with AANM and asked Dr. Campbell whether she was still on partnership track. According to Dr. Bowers, Dr. Campbell responded that "I never intended to make you a partner." After being thus informed, Dr. Bowers began looking for jobs elsewhere. As a result of her search, she scheduled an on-site interview with an anesthesiology group in Florida at the beginning of January, 1998.

On the evening of Friday January 2, 1998, Dr. Campbell called Dr. Bowers at home and told her to take the job in Florida because she was to be terminated by AANM; when pressed for a reason, Dr. Campbell asserted that there had been some complaints about her conduct and her personality. Dr. Campbell asked Dr. Bowers to clean out her locker at the hospital over the weekend but she chose instead to keep her interview with the group in Florida. When she returned and attempted

3

to clean out her locker on Monday morning, she was provided with a written notice of her termination which contained no specification of cause. Dr. Campbell then threatened to have Dr. Bowers charged with trespass for allegedly causing a scene and had her escorted from the hospital by security guards. AANM paid Dr. Bowers no further salary under the contract and cancelled her malpractice and health insurance. Unsuccessful in finding employment with another group, Dr. Bowers moved to Florida and began building a solo practice. She asserts that, in doing so, she spent $80,000 of her savings and borrowed an additional $30,000 to support herself and her daughter until her practice got under way.

Dr. Bowers brought this suit, alleging that Dr. Campbell, acting individually and on behalf of AANM, breached the employment contract between the parties by terminating Dr. Bowers without cause with five months remaining on the one-year contract. She also advanced a claim for tortious breach of contract, and she sought compensatory damages for loss of income, costs incurred in relocating and establishing her own practice, and mental anguish and emotional distress, as well as punitive damages. At the conclusion of the presentation of all the evidence, the district court granted AANM's motion for a j.m.l. rejecting Bowers's claim for tortious breach of contract against both Dr. Campbell and AANM. The jury was then instructed to determine whether Dr. Campbell had breached Paragraph 8D of the contract in terminating Dr. Bowers, to which the jury responded affirmatively. It was also asked to assess compensatory damages, including "emotional distress and mental anguish,"

4

for which the jury awarded Dr. Bowers $175,000.  She then filed a motion for a new trial on her claim for tortious breach of contract, which motion the district court denied.  The district court granted AANM's motion for remittitur and a j.m.l., concluding that Dr. Bowers was entitled only to 30 days' pay ($15,660) for AANM's failure to furnish her with 30 days' advance notice of termination pursuant to Paragraph 8B.  Dr. Bowers appeals both decisions of the district court.

## II. Analysis

### A.  Standard of Review

"'A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'"[1] We apply the same standard as does the district court, i.e., "[a] jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did."[2]

Remittitur is allowed if the damages awarded by the jury are excessive.[3]  "A verdict is excessive if it is 'contrary to right reason' or 'entirely disproportionate to the injury sustained.'"[4] Finally, we

---

[1] Harrington v. Harris, 118 F.3d 359, 367 (5th Cir. 1997) (quoting Hiltgen v. Sumrall, 47 F.3d 695, 699 (5th Cir.1995)).

[2] Harrington, 118 F.3d at 367 (quoting Fed. R. Civ. P. 50(a)(1)).

[3] Eiland v. Westinghouse Electric Corporation, 58 F.3d 176, 183 (5th Cir. 1995) (citing Westbrook v. General Tire and Rubber Co., 754 F.2d 1233, 1242 (5th Cir. 1985)).

[4] Eiland, 58 F.3d at 183 (quoting Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983)).

5

review the district court's interpretation of an unambiguous contract, a question of law, de novo.[5]

B.  Discussion

1.  Interpretation of the Contract

Dr. Bowers insists that the district court erred in granting AANM's motion for a j.m.l., thereby overturning the jury's verdict in her favor.  She contends that Dr. Campbell purported to terminate her employment for cause when no cause existed, and that in doing so he violated paragraph 8D of the contract, as the jury found.  As such, she claims, Dr. Campbell, individually, and AANM are liable for damages for lost salary, relocation costs, and emotional and mental distress, for which the jury awarded her $175,000.

After the jury had rendered its verdict, the district court granted AANM's motion for a j.m.l., concluding that Dr. Bowers's employment was subject to an at-will provision, as set forth in paragraph 8B of the contract, requiring only 30 days' notice.  Under Mississippi law, when an employment contract "'stipulates for, or where usage requires, a certain period of notice, the employment may be cancelled on shorter notice or with none at all, upon payment of wages or salary for the period of notice.'"[6] Applying that rule, the district court properly found that Dr. Bowers was entitled only to 30 days salary.  As a result,

---

[5] Stinnett v. Colorado Interstate Gas Co., 227 F.3d 247, 254 (2000).

[6] Fusilier, Ott, & McKee, P.A. v. Moeller, 507 So.2d 63, 67 (Miss. 1987) (quoting 9 Williston, A Treatise on the Law of Contracts, § 1017 (1967)).

the district court correctly granted AANM's motion for remittitur and reduced the jury's damages award from $175,000 to $15,660, which represents 30 days' salary under the employment contract between Dr. Bowers and AANM. The trial court's reduction of the damage award was appropriate because any amount of compensatory damages awarded by the jury in excess of 30 days' salary, such as, for example, damages for the emotional distress suffered by Dr. Bowers or the relocation costs she incurred, is by definition excessive under the contract's provision allowing at-will termination on 30 days' notice.

2. Tortious Breach of Contract

Dr. Bowers advances that the district court erred in dismissing her claims for tortious breach of contract against AANM and Dr. Campbell in his individual capacity because, she contends, there was sufficient evidence to support her claim that Dr. Campbell knowingly breached the contract. Under Mississippi law, when such evidence is presented at trial, the court must allow the jury to resolve the factual question whether such a breach occurred.[7] Dr. Bowers insists that Dr. Campbell knowingly breached the terms of the contract in terminating her employment for cause when no cause existed. The district court correctly found, however, that Dr. Campbell did not terminate Dr. Bowers pursuant to the "for cause" provision but rather under a separate provision allowing for at-will termination on 30 days' notice. And even though Dr. Campbell failed to provide Dr. Bowers with the requisite

---

[7] Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co., 604 So.2d 236, 240 (Miss. 1992).

7

notice, that failure is remedied by the district court's award of 30 days' salary in compensation, which we agree is proper here.

Dr. Bowers also appeals the district court's dismissal of her claim for tortious breach of contract and her request for punitive damages, urging that Dr. Campbell intentionally inflicted emotional distress on her by the manner in which he terminated her employment and the manner in which he treated her when she returned to the hospital to clean out her locker. Under Mississippi law, punitive damages are only to be awarded if the breach of contract is accompanied by an "intentional wrong, insult, abuse or such gross negligence as to constitute an independent tort."[8] We agree with the district court that the evidence adduced here is insufficient to prove that such an independent tort was suffered by Dr. Bowers.

Although Mississippi law allows "damages for intentional torts even where they are not accompanied by physical or bodily injury,"[9] it does so only in limited circumstances, under the rubric of intentional infliction of emotional distress ("i.i.e.d."). "'In such instances, it is the nature of the act itself — as opposed to the seriousness of the consequences — which gives impetus to legal redress.' The law

intervenes only where the distress inflicted is so severe that no

---

[8] <u>Fusilier</u>, 507 So.2d at 69.

[9] <u>Burroughs v. FFP Operating Partners, L.P.</u>, 28 F.3d 543, 549 (5th Cir. 1994).

reasonable man could be expected to endure it."[10]

> [A] plaintiff must prove that defendant's conduct is "extreme and outrageous." It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Though plaintiff need not prove cognizable physical injuries, the emotional stress must be genuine and severe.[11]

Although the behavior of Dr. Campbell, if it was as represented by Dr. Bowers, would be deplorable, it would not be so egregious as to constitute an independent tort under Mississippi law. Dr. Bowers complains that in the wake of her termination, she suffered from anxiety over both her finances and possible damage to her reputation, and that she was humiliated by being escorted out of the hospital by security guards in the presence of her former colleagues and friends. We nevertheless agree with the district court that these claims, even when viewed in the light most favorable to Dr. Bowers as the non-movant, were

insufficient as a matter of law to sustain her claim for tortious breach of contract.[12]

---

[10] Id. (citations omitted).

[11] Id. at 546 (citations omitted).

[12] In Burroughs, we applied Mississippi law in holding that emotional injuries described as leaving the plaintiff "jittery, upset, unnerved, depressed, crying, emotional, mortified, terribly upset, bothered tremendously, and very badly hurt" and resulting in

9

Dr. Bowers contends further that Dr. Campbell should be held liable individually for tortious breach of contract. "[W]hen a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable."[13] Because we find that no tort was committed by Dr. Campbell in terminating Dr. Bowers, he is protected from liability by the legal fiction of the corporate veil. As such, we agree with the decision of the district court to grant Dr. Campbell's motion for a j.m.l., rejecting those claims against him in his individual capacity.

## III. Conclusion

For the foregoing reasons, we conclude that the district court correctly granted AANM's motion for a j.m.l. and remittitur, and correctly limited the damages to Dr. Bowers to $15,660. We also conclude that the district court was correct in dismissing Dr. Bowers's claim for tortious breach of contract against both AANM and Dr. Campbell in his individual capacity because she failed to adduce sufficient evidence to support that claim. Therefore, the judgment of the district court is, in all respects,

AFFIRMED.

---

her "poor church attendance in the period following the incidents of this case and to her overall lower level of participation in community affairs" but not including "medical testimony describing any clinical manifestations of depression or other mental infirmities" were "insufficient to sustain damages for i.i.e.d." Burroughs, 28 F.3d at 549.

[13] Mississippi Printing Co., Inc. v. Maris, West and Baker, Inc., 492 So.2d 977, 978 (Miss.1986).