**Edward E. EAVES Plaintiff**

v.

**K–MART CORPORATION Defendant**

**No. 1:00CV118GR.**

United States District Court,
S.D. Mississippi,
Southern Division.

June 7, 2001.

Walter L. Nixon, Jr., Biloxi, MS, David C. Morison, Biloxi, MS, for Plaintiff.

Edward E. Eaves, Picayune, MS, pro se.

## MEMORANDUM OPINION

SUMNER, District Judge.

This cause is before the Court on the motions for summary judgment [49–1], to dismiss [59–1], and for sanctions [59–2] filed by the defendant, K–Mart Corporation, pursuant to Rules 56 and 37 of the Federal Rules of Civil Procedure, respectively. Also, before the Court are motions to strike the affidavit of Amy Truesdale [62–1][64–1] and for sanctions [62–2] filed by the plaintiff, Edward E. Eaves. After due consideration of the evidence of record, the briefs of the parties, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### Statement of Facts

On or about November 13, 1998, the plaintiff applied for work with the defendant seeking a job in loss prevention at its store located in Long Beach, Mississippi. (Ct. R., Doc. 49, Exh. 2, ¶ 3.) The plaintiff

was interviewed and recommended for employment by Tommy Davis, the store's security manager, and was ultimately hired by the store's manager, Paul McElveen, as a loss control associate/management trainee beginning on November 23, 1998. (*Id.* at Exh. 2, ¶¶ 2–4; Exh. 2–E, p. 12.) According to the defendant's employee handbook, the plaintiff was employed at-will. (Ct. R., Doc. 1, Exh. B, p. 21.)

Shortly thereafter, the store's management began receiving several oral and written complaints about Eaves from female employees. For instance, Rhonda Carter provided a written report on December 9, 1998, claiming that the plaintiff continuously stared at her making her feel uncomfortable. (Ct. R., Doc. 49, Exh. 1–A.) Another employee, Amy Black, orally reported to a member of management that Eaves stared at her as though he was "checking her out." (*Id.* at Exh. 1–B.) Davis subsequently informed the plaintiff of the allegations and instructed him to refrain from any contact with any associate until an investigation could be conducted. (*Id.* at Exh. 1–C; Exh. 1–D, p. 3; Exh. 1–M; Exh. 1–T, p. 14.) Despite the warning, the plaintiff admittedly conversed with fellow associates and received statements from them during the investigation. (*Id.* at Exhs. 1–H–1L; Exh. 1–O; Exh. 1–T, pp. 2–4.)

On December 11, 1998, McElveen, Davis, and Bill Lewis, the defendant's district manager, met with the plaintiff to discuss both the allegations of sexual harassment and his subsequent insubordinate actions. (Ct. R., Doc. 49, Exh. 1, ¶¶ 3–7.) The plaintiff secretly tape-recorded portions of the meeting. (Ct. R., Doc. 77, Exh. 4.) A transcript of the recording demonstrates that Lewis informed the plaintiff that his prior alleged actions neither constituted sexual harassment nor were they a basis for his termination. (*Id.* at pp. 1, 4, 10–11.)[1] The transcript further illustrates that Lewis expressed his concern with the plaintiff's insubordinate actions. (*Id.* at pp. 4, 6–7, 10–11.)

After hearing the plaintiff's version of the facts, Lewis instructed him to temporarily leave the meeting and to refrain from talking to anyone until a decision on his employment status could be made. (Ct. R., Doc. 49, Exh. 1, ¶ 18; Exh. 2, ¶ 9.) The plaintiff, however, approached several employees during the break, including Lewis' assistant, Glennis Wasserman, in an attempt to reiterate his position. (*Id.* at Exh. 1, ¶¶ 19–20; Exh. 1–N; Exh. 1–T, pp. 18–19; Exh. 2, ¶¶ 10–12.) An assistant manager, Amy Truesdale, also witnessed the plaintiff talking to several employees about the meeting and instructed him to immediately stop. (*Id.* at Exh. 3, ¶¶ 5–6.) When the plaintiff ignored Truesdale's instructions, she reported his actions to McElveen. (*Id.* at ¶ 6.) As a result of the plaintiff's insubordinate actions, he was summoned back to the meeting and terminated by Lewis with the approval of McElveen. (Ct. R., Doc. 49, Exh. 1, ¶¶ 21–24; Exh. 1–T, pp. 18–20; Exh. 2, ¶ 12.) It was later learned that the plaintiff had falsified information on his employment application to gain employment with the company. (*Id.* at Exhs. 1–P–1–S.)[2]

---

1. The tape and transcript contain several breaks and interruptions which do not reveal the complete discussion between the parties.

2. On his employment application, the plaintiff claimed that he left employment as a loss prevention specialist with Lowe's because there was no opportunity for promotion and that he simply failed to reinlist in the United States Navy upon the expiration of his term.

(Ct. R., Doc. 49, Exh. 1–P.) In contrast, the plaintiff's military records indicate that he received an other than honorable discharge from the Navy resulting from the commission of a serious crime. (*Id.* at Exh. 1–Q.) The plaintiff's former employment records at Lowe's further demonstrate that he received a written warning for harassing a female em-

Upon termination, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission [EEOC] alleging race discrimination. (Ct. R., Doc. 77, Exh. A, p. 10.) Specifically, the plaintiff alleged that he had been discriminated against because McElveen had purportedly been accused of sexual harassment, but remained employed. (*Id.*) The EEOC subsequently issued a "determination" claiming that an investigation established reasonable cause to believe that the plaintiff had been subjected to race discrimination on that basis alone. (*Id.* at pp. 1–3.) On March 16, 2000, the plaintiff, by and through counsel, filed suit against the defendant asserting race discrimination pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000–e *et seq.,* and state law claims for breach of contract and intentional infliction of emotional distress. (Ct. R., Doc. 1.) In response, the defendant filed the instant motion for summary judgment. (Ct. R., Doc. 49.)

During the discovery process, United States Magistrate Judge John M. Roper granted the defendant's motion to compel and ordered the plaintiff to produce discovery. (Ct. R., Doc. 47.) To date, the plaintiff has failed to adequately respond to the defendant's discovery requests. During the plaintiff's deposition, the magistrate judge further ordered him to respond to questions regarding his former employment. (Ct. R., Doc. 59, Exh. G, p. 26.) The plaintiff, however, continued to provide evasive and incomplete answers despite the magistrate judge's directive. (*Id.* at pp. 22–28, 57–58.)

Counsel for the plaintiff ultimately filed a motion to withdraw. (Ct. R., Doc. 51.) After conducting a hearing on March 26, 2001, the magistrate judge granted the motion and ordered the plaintiff to either obtain additional counsel or inform the Court of his intention to proceed *pro se.*

(Ct. R., Doc. 58.) The defendant subsequently filed the instant motion to dismiss, with the approval of the Court, seeking dismissal and sanctions for the plaintiff's repeated failure to comply with the discovery requests and the magistrate judge's directives. (Ct. R., Docs.59, 63.) On April 26, 2001, the plaintiff appeared *pro se* and timely responded to the defendant's motions to dismiss and for summary judgment. (Ct. R., Docs.69, 77–78.) The plaintiff also filed several motions seeking to strike Truesdale's affidavit. (Ct. R., Doc. 62, 64.)

*Standard of Review*

Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1, 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted). A district court may properly grant a motion for summary judgment when, after viewing the facts in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Deas v. River West, L.P.,* 152 F.3d 471, 475 (5th Cir. 1998). Stated differently, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

If the moving party "satisfies its initial burden of demonstrating the absence of a material fact issue, 'the non-movant must identify specific evidence in the ... record

---

ployee and that he was terminated for insub-

ordination. (*Id.* at Exhs. 1–R–1–S.)

demonstrating that there is a material fact issue concerning the essential elements of its case.'" *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) *quoting Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994). "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the non-movant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.,* 52 F.3d 560, 565 (5th Cir.1995) (citation omitted). Consequently, "[n]either 'unsubstantiated assertions' nor 'conclus[ional] allegations' can satisfy the non-moving party's burden." *Lawrence v. University of Tex. Med. Branch at Galveston,* 163 F.3d 309, 312 (5th Cir.1999) (citation omitted).

### Legal Analysis

I. *The Plaintiff's Motions to Strike Truesdale's Affidavit and for Sanctions*

■ The plaintiff filed the instant motions claiming that Truesdale's affidavit submitted in support of the defendant's motion for summary judgment conflicts with a written statement previously given on or near the dates in question. The Court disagrees. Truesdale's previous statement references what she had heard from others about Eaves prior to December 9, 1998, not what she had personally observed subsequent to that time. (*Cf.* Ct. R., Doc. 49, Exh. 3; Pl.'s Supp. Mot. to Strike, Exh. A.) Regardless, the only portion of Truesdale's affidavit taken into con-

sideration in the instant action is her personal observation of the plaintiff discussing the issues with several employees on December 11, 1998, even after she instructed him to stop. The plaintiff has not offered any admissible evidence to rebut Truesdale's affidavit in that regard. The Court therefore finds that the plaintiff's motions to strike Truesdale's affidavit should be denied. The Court likewise finds that the plaintiff's motion for sanctions should be denied.

### II. *Title VII/Section 1981 Allegations* [3]

■ Title VII prohibits an employer from discriminating against its employees on the basis of race. 42 U.S.C. § 2000e–2(a)(1). Without direct evidence of the defendant's discriminatory intent, as in this case, the plaintiff may invoke the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.1998). "To succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a *prima facie* case of discrimination." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). If the plaintiff establishes a *prima facie* case by a preponderance of the evidence, an inference of intentional discrimination is created. *Grimes v. Texas Dep't of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996) (citation omitted).

Once a *prima facie* case is demonstrated, the defendant has the burden of production [4] to articulate a legitimate, non-

---

**3.** "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996) (citation omitted). Thus, the Court will contemporane-

ously analyze the plaintiff's racial discrimination allegations.

**4.** The plaintiff retains the ultimate burden of persuasion at all times. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citations omitted).

discriminatory reason for the disputed employment action. *Grimes*, 102 F.3d at 140 (citation omitted). Stated differently, "[i]f the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference of discrimination raised by the plaintiff's *prima facie* case drops from the case." (*Id.*) The plaintiff must then prove that the defendant's reason is pretextual. (*Id.*) To satisfy this burden, sufficient evidence must be presented upon which the fact finder might reasonably infer discriminatory intent on the basis of his race. *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n. 23 (5th Cir.2000) *citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993–94 (5th Cir.1996).

### A. *The Prima Facie Case*

■ To establish a *prima facie* case of race discrimination under a disparate treatment theory, the plaintiff must demonstrate, *inter alia*, that he was qualified for the position and that others similarly situated were treated more favorably. *Urbano, supra*, 138 F.3d at 206 (citations omitted). The plaintiff offers no evidence to demonstrate that he was qualified for the loss control associate/management trainee position.[5] The plaintiff's subjective opinion that he was qualified for the position is insufficient to create a triable issue concerning his qualifications. *See Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1189 (5th Cir.1997) (a plaintiff's subjective opinion, without more, is insufficient to establish a claim of discrimination). The evidence of record confirms that the plaintiff was never qualified for the position with the defendant, *i.e.*, he obtained the position by falsifying information on his employment application and he was unable

to follow instructions from his supervisors. For these reasons, the Court finds that the plaintiff cannot demonstrate a *prima facie* case of race discrimination.

■ Alternatively, the plaintiff asserts in both his EEOC charge and complaint that the defendant failed to terminate McElveen after he was accused of sexual harassment. The plaintiff, however, has failed to specifically identify the circumstances surrounding the allegations. The Court finds that such general allegations are insufficient to withstand a motion for summary judgment. Moreover, the plaintiff cannot demonstrate that McElveen was treated more favorably under nearly identical circumstances. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir.1991) (citations omitted). The plaintiff's own recording of the meeting conclusively establishes that neither Lewis nor McElveen considered the allegations against the plaintiff as constituting sexual harassment or that they took such allegations into consideration as a basis for his ultimate termination. The Court therefore alternatively finds that the plaintiff cannot demonstrate a *prima facie* case of race discrimination.

### B. *Legitimate Nondiscriminatory Reasons*

■ Assuming *arguendo* that the plaintiff can demonstrate a *prima facie* case of race discrimination, the Court finds that the defendant offered several legitimate, nondiscriminatory reasons for his termination. The plaintiff was insubordinate on three separate occasions and used poor judgment by conversing with fellow associates and receiving statements from them during the investigation process, by reit-

---

5. The Court is not required to search through the record to find evidence in support of the plaintiff's opposition to the defendant's dis-

positive motion. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (citation omitted).

erating his position to employees during the break in the meeting, and by failing to follow Truesdale's directive. Lewis and McElveen also concluded that the plaintiff was unreliable and untrustworthy.

### C. Pretext

■ During the meeting, the plaintiff claimed that McElveen wanted him fired. (Ct. R., Doc. 77, Exh. 4, p. 12.) The Fifth Circuit has found that where "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created." *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 320 n. 3 (5th Cir.1997) *citing Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996). As previously noted, McElveen hired the plaintiff in the instant action and approved his termination approximately two weeks later. Thus, there is an inference that race was not a factor in the decision to terminate the plaintiff. The plaintiff has failed to identify any admissible evidence to overcome that presumption or to demonstrate pretext. The evidence of record is also insufficient to establish a triable issue of race discrimination. The Court therefore finds that the defendant is entitled to summary judgment with regard to the plaintiff's race discrimination allegations.

### III. State Law Claims

#### A. Breach of Contract

■ The plaintiff claims that he was terminated in violation of the defendant's employee handbook. The Court disagrees. The Mississippi Supreme Court has recently reiterated that "[a]n employee handbook cannot be considered a contract between the employer and the employee where the handbook explicitly states that the employee can be terminated at will." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.,* 797 So.2d 845, 2001 WL 41412 *2 (Miss.2001) *quoting*

*Hartle v. Packard Elec.,* 626 So.2d 106, 109 (Miss.1993). Mississippi is an employment-at-will state in that an employee may be terminated from his job for a good reason, a bad reason, or no reason at all. *Slatery v. Northeast Miss. Contract Procurement, Inc.,* 747 So.2d 257, 259 (Miss. 1999) (citations omitted). The defendant's employee handbook specifically defined the plaintiff's employment as at-will. The Court therefore finds that the plaintiff cannot maintain an action for breach of contract against the defendant. The Court alternatively finds that the defendant did not breach the terms of its employee handbook.

#### B. Intentional Infliction of Emotional Distress

■ The plaintiff's emotional distress allegations are barred by the exclusive remedy provision of the Mississippi Workers' Compensation statute. MISS. CODE ANN. § 71-3-9. The plaintiff's claim is likewise barred by the one-year limitation period for intentional torts. MISS. CODE ANN. § 15-1-35; *City of Mound Bayou v. Johnson,* 562 So.2d 1212, 1218 (Miss.1990); *King v. Otasco, Inc.,* 861 F.2d 438, 442 (5th Cir.1988). Moreover, the plaintiff's allegations are without merit. A claim for intentional infliction of emotional distress does not ordinarily lie for mere employment disputes. *Jenkins v. City of Grenada, Miss.,* 813 F.Supp. 443, 447 (N.D.Miss.1993). To be actionable, a defendant's conduct should evoke outrage or revulsion. *Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir. 1994). Based on the evidence of record, the plaintiff cannot meet this standard. For these reasons, the Court finds that the defendant is entitled to summary judgment with regard to the plaintiff's state law claim for intentional infliction of emotional distress.

## IV. *The Defendant's Motions to Dismiss and for Sanctions*

 The defendant alternatively requests that the instant action be dismissed for the plaintiff's repeated failure to comply with discovery and the magistrate judge's directives. The Court's inherent authority to sanction a party has been summarized, in relevant part, as follows:

> The federal courts are vested with the inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases ... This includes the power of the court to control its docket by dismissing a case as a sanction for a party's failure to obey court orders.

*Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir.1995) (citations and internal quotations omitted). To exercise its inherent powers to sanction a party, the Court must make a "specific finding of bad faith." *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir.1999).

 The plaintiff maintains that his previous counsel is to blame for his failure to fully comply with the defendant's discovery requests and the magistrate judge's directives. The Court disagrees. While the plaintiff's previous counsel may have failed to fully comply with the propounded written discovery, a review of the plaintiff's deposition indicates that he provided evasive and incomplete answers despite the magistrate judge's directive for him to respond to questions regarding his former employment. The plaintiff is personally responsible for his conduct at the deposition. Under the unique circumstances of this case, the Court finds that an appropriate sanction against the plaintiff for his wilful conduct at the deposition is dismissal of the instant action with each party to bear their respective costs. Thus, the Court alternatively finds that the defendant's motion to dismiss should be grant-ed, but the defendant's motion for sanctions should be denied.

### Conclusion

For the reasons above, the Court finds that the plaintiff's motions to strike and for sanctions should be denied. The Court further finds that the plaintiff can neither demonstrate a *prima facie* case of race discrimination nor establish pretext. Because a genuine issue of material fact does not exist, the Court finds that the defendant is entitled to summary judgment with regard to the plaintiff's allegations of race discrimination. The Court also finds that the plaintiff cannot maintain state law actions for either breach of contract or intentional infliction of emotional distress. The Court alternatively finds that the defendant's motion to dismiss should be granted. The Court, however, finds that the defendant's motion for sanctions should be denied. Each party shall bear their respective costs in association with this action.

A Final Judgment in accordance with this Memorandum Opinion shall issue this date.

### FINAL JUDGMENT

This cause comes before the Court on the motions for summary judgment [49–1], to dismiss [59–1], and for sanctions [59–2] filed by the defendant, K–Mart Corporation. Also, before the Court are motions to strike the affidavit of Amy Truesdale [62–1][64–1] and for sanctions [62–2] filed by the plaintiff, Edward E. Eaves. Pursuant to the Memorandum Opinion entered in this cause, this date, incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED that the plaintiff's motions to strike the affidavit of Amy Truesdale [62–1][64–1] be, and are hereby, denied. It is further,

ORDERED AND ADJUDGED that the plaintiff's motion for sanctions [62–2] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that the defendant's motion for summary judgment [49–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED that the defendant's motion to dismiss [59–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED that the defendant's motion for sanctions [59–2] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that the above referenced action be, and is hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED that each party shall bear their respective costs in association with this action.